MONCURE, P-,
after stating the case, proceeded:
The errors assigned in the petition for an appeal to the District court, which were the errors relied on by the counsel for the appellant, in the argument of the case before this court, are:—1st, that the trustees in the deed of the 31st day of May 1843, should be made parties to the suit; 2ndly, that an abatement of the purchase money should be made for the alleged deficiency of one acre in the quantity of the land; 3rdly, that the shares of the infant defendants should be properly invested and secured; and 4thly, that the appellant was improperly subjected to the payment of costs, as he was not in default. I will proceed to consider these supposed errors in the order above stated; and
First, that the trustees aforesaid should be made parties to the suit.
Whether they should be parties to the suit, or rather should have been parties to the suit at the time of its institution or not, depends upon whether they had then any legal title to the land. And that question depends upon another;' which is, whether, by our statute of uses, the legal title was transferred from them to the children of Anna D. Tatum, the plaintiffs and defendants in this suit at the time of her death in October 1865, or at the time of her husband, Theophilus Tatum’s death, in November 1865. Certainly such title would have been so transferred by the operation of the English ^statute of uses. 1 Domax’s Dig., pp. 194-195, marg. There seems to be a material difference between the English statute of uses and ours; and it may be doubtful whether our statute would have that effect. Id. and seq. ; Bass v. Scott, 2 Leigh 356. Our statute has not 3ret been judicially construed, except that in the case just cited, it was considered as not extending to a devise. If the trustees in this case had any title to the land at the time of the institution of the suit, it was a mere dry legal title, such as is described in Hill on Trustees, pp. 316-317, marg. There was but one duty which then remained for them to perform, and that was, to convey that legal title to the plaintiffs and defendants in this suit, who were seized of a perfect equitable title, and were in the actual possession and enjoyment of the estate. If these trustees had refused to perform that duty on request, they might have been compelled to do so by suit, and would have subjected themselves to the costs of the suit. Id. 278, marg. They could not have charged the estate by any act or default of theirs, and could not have recovered possession of it by an action at law against the beneficiaries. Code, ch. 135, § 21, p. 611. It is not strange therefore that the counsel who drew the plaintiff’s bill considered that they had no interest in the subject of the suit, or at least not such an interest as to require them to be made parties. But all the facts in regard to the title were set out in the bill, and the deed of trust was exhibited therewith, so that the court might see, and the purchaser might see, the precise state of the title. No objection was made by the purchaser to the title, nor to any supposed defect of the suit in not making the trustees parties, until long after the report of sale had been confirmed, the purchaser had received possession of the land, had paid a large part of the purchase money, had executed his notes for the balance, and his note for the last deferred payment had become payable.
*But without deciding whether this objection for want of parties, would have been valid, even if made by the purchaser before the confirmation of the sale, much less that it was valid when made for the first time about two years after the sale, on being pressed for the payment of the balance of the purchase money; I am of opinion that it was cured by the deed of release which was executed by Robert H. Branch, surviving trustee, under the said deed of trust, and filed in the cause when the last decree was entered therein. Surely if such a release had been executed before the suit was brought, it would have been unnecessary and improper to have made the trustees parties; and for the same reason, it was unnecessary, and would have been improper, to amend the bill and make them parties after that release was executed and filed. The appellant says, he does not know that Branch is the “surviving trustee,” and, that “if it be a fact that Boyd, the other trustee, is dead, it ought, somehow, to have been properly stated in the pleadings; it certainly is not a fact of which the court will take judicial notice.” The deed of release recites that Branch was the surviving trustee. No objection was made to it in the court below. It was not there pretended by the purchaser that Boyd was not dead, nor did he call for proof of the fact, or ask for time to enquire into it. The objection was made, for the first time, in the appellate court; and it then came too late. The presumption is, that Boyd was *266 dead and Branch was the surviving trustee, as the deed recites. I am, therefore, of opinion that this first assignment of error ought to be overruled.
Secondly, that an abatement of the purchase money should be made for the alleged efficiency of one acre in the quantity of the land.
The tract of land was supposed to contain ninety acres. It was so described in the bill, and was no doubt so described in the advertisement of sale, though in the *deed of trust, which was filed as an exhibit with the bill, it is described as containing ninet3r acres, “be the' same more or less.” I think the land was not sold by the acre, but that it was sold by the tract for $4,750, which is far from being an equimultiple of the supposed number of acres. The boundaries of the land were well defined, and are minutely set out in the deed of trust. There appears to have been no doubt or difficulty as to any of the corners or 'lines. The purchaser no doubt viewed every foot of it. Being a small tract, he could probably stand in the centre and see all of it at one view. He was a practical surveyor, and could estimate the quantity with sufficient accuracy to be satisfied that it was about ninet3r acres; and he was willing and agreed to give for it $4,750. It is extremely improbable that he would have been unwilling to give that price for. it if he had known that the actual quantity was eighty-nine instead of ninety acres; or that the owners, if that had been the fact, would have taken any less for it. The improvements were valuable, and worth at least as much as the land. The purchaser called for no surve3r, even supposing that he had a right to call for one; but paid a large part of the purchase money, -gave his notes for the balance, and entered into the possession and enjoyment of the land; and the sale was confirmed by the court. Being a practical surveyor, he knew that surveys of the same land rarely, if ever, produce precisely the same quantity, but almost always vary to some small extent, on account of the variation of instruments. That the quantity might vary in this qase, one way or the other, to the extent of an acre, was what might reasonably have been and probably was expected. But it was as fair for one as for the other. The purchaser sa3*s, he afterwards made an experimental survey and ascertained the deficiency to be an acre and a fraction. Suppose he had ascertained an excess to that extent instead of a deficienc3r, *would he have considered himself bound to pay for it? Would he have been held liable for it? Would the parties to the suit have thought of claiming it? I think not. Then the rule ought to work both ways.
But a conclusive answer to this assignment of error is, that there is no proof in the Record that the alleged deficiency exists. The fact is asserted in the affidavit filed by the purchaser, nearly two years after the sale, in answer to the rule requiring him to pay the balance of the purchase money. But it is an affirmative allegation, the proof of which devolved on him who made it. The ground on which alone a purchaser in such a case is entitled to relief, is that of mistake. And he must clearly prove the mistake, especially in a case like this, in which the report of sale as been confirmed, and there has been so great a lapse of time, and so much done by the parties, founded on the assumption that there was no such mistake. Sven if it be true, as stated in the affidavit, that the quantity of the land is stated as 89 acres in the books of the commissioner of the revenue (of which however there is no legal evidence), that does not prove the real quantity. I am therefore of opinion that this second assignment of error ought to be overruled.
Thirdty, that the shares of the infant defendants should be properly invested and secured.
The sale in this case was made when the infant defendants were nearly of age: one of them being nineteen and the other seventeen ; and both of them having answered the bill in proper person upon oath, expressing a desire that the sale should be made. Their portions of the cash payment were decreed to be paid, and have no doubt been paid, to their legally qualified guardians. The balance of the purchase money remaining unpaid is about equal to the amount of their shares of the whole purchase money. When the last decree in the cause was made requiring the purchaser to pay the *balance of the purchase money, one of these two infant1 defendants had probably arrived at age, and the other is no doubt now of age. Certainly it is the duty of the court, in such a case as this, to see that an infant’s share of the fund is secured, as required by the Code, chapter 124, ? 3, page 581. The commissioner appointed to sell the land in this case was required, before acting under the decree, to enter into bond with good security in the penalt3r of six thousand dollars, conditioned according to law. As the infants would soon be of age, it was no doubt desired by them; and thought proper by the court, that their portions of the cash payment should be paid to their legally qualified guardians, instead of being loaned out or otherwise invested for short periods. This may have been error; but no one complains who has any right to complain of it. The infant defendants, or ■ rather the defendants who were infants, do not complain of it. They are satisfied, no doubt because they have received their money*, or the full benefit of it. The purchaser has no right to complain of it. When he paid the money, in obedience to the decree, to the commissioner of the court, who was authorized to receive it, and who had given bond with good security for its faithful application, he thereby discharged himself from all further liability for this money, and the proper application of it devolved upon the court. It is settled that a purchaser at such a sale is not answerable for any disposition which the court may make *267 of the purchase money. Brown v. Wallace, 4 Gill & John. R. 479; Daniel, &c. v. Leitch, 13 Gratt. 195, 211. I am therefore of opinion that this third assignment of error ought to be overruled.
fourthly and lastly, that the appellant was improperly subjected to the payment of costs as he was not in default.
The costs here referred to are not the costs of the *suit. All of those costs which had been incurred down to the time of the distribution of the cash payment, were paid out of the amount of that payment; and the sum of thirty-eight dollars and fifteen cents was then retained by the commissioner to meet the future costs of the suit and to be accounted for thereafter. The only costs alluded to in this assignment of error are the costs of the proceeding under the rule, which cannot be more than one or two dollars; that is, the clerk’s fee for entering it and the sheriff’s for serving it. And these costs would no doubt have been given up by the parties, or refused to be imposed on the purchaser by the court, if, on the return of the rule, he had paid the balance of the purchase money or given assurance of such payment in a short time. But he did not do so. On the contrary he stood out against the rule, and defended himself against it on the ground of defect of quantity, and defect of parties, notwithstanding the execution of the deed of release aforesaid. And when the rule was made absolute, instead of then acquiescing, he carried the case to the District court, and brought it thence to the Court of Appeals. In persisting in his resistance of the rule after the deed of release was filed, he lost the advantage he might otherwise have had in getting rid of these costs, and made the rule thenceforward a necessary proceeding. Under these circumstances, I think the court committed no error in subjecting him to these costs, and certainly none for which the decrees or any of them ought to be reversed.
I am therefore of opinion that the said decrees ought to be affirmed.
The other judges concurred in the opinion of MONCUEU, P.
Decree affirmed.