Burks, J.
The most important question arising in this case meets us at the threshold of our inquiry— whether the appellant, when he entered into the contract for the purchase of the landed estate called <£ Chatham,” intentionally took upon himself the risk of the deficiency of thirty-four and one-half acres afterwards ascertained, and on all sides admitted to *704 exist in the estimated quantity of the land purchased by him. If he assumed such risk, he must abide the of his engagement. If he did not, then, accorc¡|ng the decisions of this court oft repeated an(j t00 numerous for citation, he is entitled to compensation for the loss arising from the deficiency.
Whether the contract of sale was one of hazard as-to quantity—in other words, whether it was a contract for the sale of a certain tract of land, whatever number-of acres it might contain, or of a specific quantity—depends upon the intention of the contracting parties, to-be gathered from the terms of the contract and all the facts and circumstances connected with it.
While contracts of hazard in such cases are not invalid, courtB of equity do not regard them with favor. The presumption is against them; and while such presumption may be repelled, it can - only be effectually so done by clear and cogent proof. Jolliffe v. Hite, 1 Call. 301, 308; Hundley v. Lyons, 5 Munf. 342; Nelson v. Carrington and others, 4 Munf. 332, 340; Keyton’s adm’rs v. Brawfords, 5 Leigh 39; Bussell v. Keeran, 8 Leigh 9; Blessing’s adm’rs v. Beatty, 1 Rob. Rep. 287, 303; Caldwell v. Craig, 21 Gratt. 136; Triplett v. Allen, 26 Gratt. 721.
“ Contracts of hazard, such as these we are now considering,” says Judge Tucker in Keytons v. Brawfords, supra, “have never been discountenanced by our law. Where they are clearly established they are valid, and will be respected and enforced, if fair and reasonable. But, though such a contract of hazard is valid, it is not to be readily presumed, unless it is clearly sustained by the facts. The courts will not favor such a construction; but they will rather take it that a contract is by the acre, whenever it does not clearly appear that the land was sold by the tract, and not by the acre.”
*705 And where the parties contract for the payment of a gross sum for a tract or parcel of land, upon an estimate of a given quantity, the presumption is that the quantity influences the price to be paid, and that the agreement is not one of hazard. Blessing’s adm’rs v. Beatty, supra.
After a careful examination of the evidence in this case, I have come to the conclusion that the contract between the appellant and the commissioners of the court was of the character just described. The land purchased was in two parcels contiguous or nearly so, the one estimated as containing four hundred and fifty-nine acres, and the other forty-four acres, together five hundred and three acres. For these two parcels he contracted to pay the gross sum of $25,000, part in cash and stocks, and the residue in deferred installments, the last three bearing interest from the day he was to get possession of the land.
He was a resident of Williamsport, Pennsylvania, but, it seems, owned a tract of land in Virginia near the Chatham estate. He was on a visit to his Virginia farm when he heard that “Chatham” was in the hands of land agents in Fredericksburg for sale. The commissioners were empowered by the decree under which they acted to make sale through laud agents subject to ratification by the court. Contemplating a purchase, and with a view to information concerning the land, he applied to the agents, who furnished him with a rough map or diagram of the land. This map gave the boundaries of the two parcels, and the quan. tity in each parcel was noted on it—one parcel was put down as containing four hundred .and fifty-nine acres, and the other forty-four acres. And the two quantities were added together, making five hundred and three acres. The figures “458” seem to *706 have been first set down as the quantity of the former parcel. They were partially erased yet remained visible, and the figures “459” substituted. The map on its face purported to be drawn from “recent surveys.” Accompanied by Lacy (the owner of the land) and by one of the agents, he went upon the larger parcel and made what must have been a very imperfect examination of it: for, it seems, he did not remain on it longer than three hours. The information he obtained concerning it was chiefly from the map, the agent and Lacy. He could not have derived much from inspection; for it was proved that his eyesight was so defective that “he could scarcely recognize an acquaintance across the room” nor “one of his children at the distance of ten feet.” He says, that Lacy gave him an estimate of the quantity in each of the fields in this parcel, which he noted in a memorandum preserved and made a part of the record, making the aggregate quantity precisely four hundred and fifty-nine acres. Lacy states, that he informed him that he did not know what quantity the tract contained, and that the land would be sold by the tract and not by the acre. It seems, however, that the appellant relied for the quantity chiefly upon the map and upon what, he says, was told him by the- agents and the commissioners. He cannot be blamed for this: for Lacy had no authority to make, direct, or control the sale. The commissioners, only, and the agents employed by them had that power.
"With the information thus obtained, he addressed a letter to the agents, inquiring whether they would take $25,000 (payable as hereinbefore indicated) “for the Chatham farm in Stafford county, containing five hundred acres, with fisheries, bridge privileges and all other rights pertaining thereto.” To this letter the *707 agents in a few days replied, accepting the offer. Thereupon a contract of sale was drawn up by the appellant, at Williamsport, Pa., signed by him forwarded to the agents to be executed by them. It was accordingly so executed, and a copy furnished to the appellant. In this contract the land is described according to the map which had been furnished, as well in respect of boundaries as quantity. The larger parcel is described as “ Chatham farm containing four hundred and fifty-nine acres,” and the other parcel, (as on the map), the “wood lot, containing forty-four acres, connected with and being a part of said Chat-ham farm, and containing in both the said tracts or lots of land five hundred and three acres, together with the fisheries,” &e. About three weeks thereafter, the commissioners made a report of the sale to the court, filing the contract therewith. In this report they describe the land sold as “the balance of the Chatham_ farm,” (a part had been previously sold to another pur-_ chaser) “viz: five hundred and three acres, for the sum $25,000;” and then set out the terms of the There were no exceptions to the report and it was at once confirmed: the decree of confirmation reciting_ the sale in these words : “ The sale of 4 Chatham,’ situated in the county of Stafford, containing five hundred and three acres, with the fisheries, &c., for the sum of $25,000, upon the terms,” &c., reciting the terms as contained in the contract. The decree further directed a conveyance to the appellant “upon his complying with the said terms of sale.”
Thus it will be seen that from the very commencement to the conclusion of the negotiations, and down to and inclusive of the report of the sale and decree of confirmation,- both of the contracting parties had treated the Chatham farm as containing five hundred *708 and three acres. That it was estimated by both parties as of that quantity, and bought and sold as and for that quantity, can scarcely admit of a reasonable doubt.
Soon after the sale was confirmed, within a few weeks, and after the appellant had made his first payment for the land, wishing to have an accurate survey preparatory to the deed to which he would be entitled on making his second payment, soon to become due— a survey obviously being proper, because the rough diagram which had been furnished contained the boundaries of the land, but no courses nor distances— he procured a survey to be made by a friend in Pennsylvania, by which it was discovered that there was a large deficiency in the quantity. He at once made this known to the commissioners; and they, therefore, at their own expense, caused another survey to be made, which showed a deficiency of thirty-four and one-half acres. This last survey not being, it seems,, satisfactory, the commissioners, after long delay and after much importunity by the appellant, had still another survey made by a different surveyor, which was found to correspond with the last, showing the same deficiency, and which was accepted by all parties as correct. In the meantime the commissioners, after discovery of the deficiency, had several times by letters promised the'.appellant that there should be some adjustment. One of them, writing 26th June 1878, after referring to his ineffectual efforts to get the surveyor to review his field notes, closes his letter by saying: “So soon as Col. B. reports the results of this review, I will unite with the other commissioner in making a fair adjustment of the matterAgain, on the 25th May 1874, they both write thus: “When Col. B. reports the results of his re-survey and some definite *709 result is reached as to the extent of deficiency, we will ■cooperate in bringing the matter to the attention of the court, in order that the matter may be fairly and legally adjusted. As previously stated, it is not our function as commissioners to make the adjustment; but we will aid in having it done by the court."
These letters are a virtual admission by the commissioners that there had been an error, a mutual mistake, in the estimate of the quantity of land sold, and that the appellant was entitled to a “fair adjustment” of his claim to compensation for the deficiency.
The evidence not only shows that the contract was for the purchase of a specific quantity of land at a gross sum, but that the quantity must have influenced the piice agreed to be paid. The detached parcel of forty-four acres appears to have been considered by both parties as of little value. The .other .tract was valuable, not only on account of the costly buildings upon it and the rights and privileges appurtenant to it, but also by reason of the intrinsic worth of the land itself, the greater portion of which is represented by witnesses as worth from $50 to $100 per acre, the other portion being esteemed by them as of comparatively little value. It does not appear distinctly in which portion the deficiency existed; although the appellant, in one of his sworn statements read in evidence, says it was in the “tillable” portion. The respective portions were not separately valued in the sale and purchase; and the just inference from the whole proof is, that so great a difference as thirty-four and one-half acres between the estimated and actual quantity in the tract, if known at the time of sale, would have materially affected the price, if indeed it would not have defeated the sale altogether. In his ■testimony the appellant says, that had he doubted the *710 accuracy of the quantity represented, he certainly would not have made the purchase at the price agreed upon, nor would he have purchased it had he known it would have fallen short as much in quantity as it
• I am of opinion that, under this state of facts, the appellant was entitled to compensation for the deficiency in the estimated quantity. But it is contended by the counsel for the appellees, that the sale having been confirmed by the court without objection or exception by the appellant, he was thereby precluded from asserting his claim afterwards; and such seems, from the decree, to have been the opinion of the learned judge in the court below. I cannot agree to this. It is true that in Virginia the general rule would seem to be, that objections by purchasers to judicial' sales for defect of title must be' made before the sale is-confirmed by the court, and that such objections after-wards made come too late. Threlkelds v. Campbell, 2 Gratt. 198; Young’s adm’r & others v. McClung & others, 9 Gratt. 336, 358; Daniel & others v. Leitch, 13 Gratt. 195, 212, 213.
The English rule is different. The reason of the-difference would seem to be, that in England the-courts undertake to sell a good title, while in Virginia they sell such title only as the parties to the suit have. - Hence, in such sales here the rule of caveat emptor applies. But even here the rule is subject to exceptions. “ There are certainly some defects,” says Judge Mon-cure, in Daniel & others v. Leitch, supra, “ to which objection may be made by a purchaser even after confirmation, here as well as in England—such, for example, as a defect arising from a want of jurisdiction, or want of parties, which would prevent a purchaser from getting the title intended to be sold and conveyed to him.”
*711 But I apprehend the rule has no application to the equity of a purchaser arising from after discovered mistake, fraud, or other like matter. Courts of equity are always ready to relieve innocent injured parties in such cases, unless by reason of acquiesence, laches, or other special circumstances, relief would be inequitable. There are no such circumstances precluding relief in this case. In all cases like the one in judgment, equitable jurisdiction is based on the mutual mistake of the contracting parties, or the mistake of one of them induced by the culpable negligence of the other. No fraud is imputed here. It is a case of mutual mistake. The sale was reported and confirmed within three weeks after it was made. The mistake was discovered by the appellant soon thereafter and promptly made kpown, and no act was done or omitted by him which can be construed into acquiesence, waiver, or laches on his part. On the contrary, the commissioners in their answer to appellant’s petition for relief in the court below, say, that the appellant “prior to the period when the deed was to be made and continuously since, has raised the issue as to the quantity of land he was entitled to claim under said contract.”
. The mistake can be rectified and compensation made to the appellant by allowing for the ascertained deficiency a proper abatement of the balance of purchase money still owing by him; and thus, while doing justice to him, no harm will be done to others. It would be singular indeed if this could not be done by a court of equity which by its agents is a party to a mistake it is called upon to relieve against. In England, it would seem, compensation would be allowed the purchaser under such circumstances after confirmation of the sale. 2 Dan. Ch. Prac. (ed. 1871), 1282, 1288. Jones v. Tatum, 19 Gratt. 720, was a case *712 a iudicial sa^e wbich had been reported and confirmed. . After confirmation, the purchaser having • made default in the payment of the last installment purc[lase xnoney, a rule was made against him to sj!OW cause why the land should not be resold to satisfy the balance of purchase money remaining unpaid. He answered the rule by affidavit, alleging defect in the title to the laud, and also that there was a deficiency of one acre in the tract of ninety acres sold to him, and claiming an abatement of the purchase money for this deficiency. Although the abatement was not allowed, the refusal was not put by the president, who delivered the opinion of the court, on the ground that the purchaser was precluded from relief by the confirmation of the sale, although that objection seems to have been made in the argument at the bar, but on other and entirely different grounds; to wit: 1st, that the sale was in gross; and, 2d, that if it were otherwise, the alleged deficiency was not proved. The opinion seems to proceed upon the idea that if the purchaser had been otherwise entitled to the abatement claimed, the confirmation of the sale would not have been an impediment.
Being of opinion, for the reasons stated, that the appellant was entitled to a proper abatement of the balance of purchase money owing by him for the deficiency of thirty-four and one-half acres in the quantity of land bought by him, and, consequently, that the court below erred in dismissing his petition, it only remains to consider what should be allowed him by way of abatement. The rule of compensation or abatement is according to the average value per acre of the whole tract, unless particular circumstances require a departure from that rule. Blessing’s adm’rs v. Beatty, 1 Rob. Rep. 305; Hoback v. Kilgores, 26 *713 Gratt. 442; Triplett v. Allen, Id. 721; Nelson v. Matthews & others, 2 Hen. & Mun. 164, 178; Nelson v. Carrington & others, 4 Munf. 332, 340; Hundley v. Lyons, 5 Munf. 342.
There are particular circumstances in this case, as there were in Hoback v. Kilgores, supra, requiring such departure from the general rule.
The buildings, bridge privileges and fisheries, are valuable, and their value must have entered largely into the price agreed to be paid for the entire estate. These are retained by the purchaser; and therefore in fixing the amount of the abatement their relative value should be deducted from the contract price ($25,000) for the whole estate, and from the sum remaining after the deduction the average price per acre of the estimated quantity of all the land (five hundred and three acres) should be ascertained, and the thirty-four and one-half acres multiplied by such price per acre as will give the correct amount, which should be credited on the principal sum still owing by the appellant as of the date from which it bears interest. I am for reversing the decree of the court below and remanding the cause for further proceedings.
Moncure, P., and Christian and Staples, J’s., concurred in the opinion of Burks, J.
The decree was as follows :
This cause, which is pending in this court, at its place of session at Eiehmond, having been fully argued, but not determined at said place of session, this day came here the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of *714 counsel, is of-opinion, for reasons stated in writing and filed with the record, that the appellant is entitled to compensation for the deficiency, ascertained to be thirty-four and one-half acres in the quantity of land the “ Chatham” farm, purchased by him from the-commissioners of the said circuit court, and that such compensation should be allowed him by way of abatement on the balance of purchase money owing by him for said farm under his contract of purchase with said commissioners.
And the court is further of opinion, that such compensation should be fixed by ascertaining the relative value of the buildings on said farm, and the bridge-privileges and fisheries belonging thereto, and deducting such ascertained relative value from the contract, price ($25,000) for the whole estate; and from the sum remaining after such deduction, the average price per acre of the estimated quantity of all the land (five-hundred and three acres) should be ascertained, and the thirty-four and one-half acres (deficiency) multiplied by such price per acre will give the proper-amount of the abatement; which amount should be credited to the appellant on the principal sum of the purchase money still owing by him; the credit to be given as of the date from which said principal sum bears interest: and to enable the said circuit court to make said abatement according to the principles herein declared, proper inquiries' under the directions of said circuit court should be made by one of its commissioners.
And the court being further of opinion for the reasons hereinbefore referred to, that the decree aforesaid of the said circuit court is wholly erroneous : It is-therefore decreed and ordered, that the said decree be reversed and annulled, and that the appellant recover- *715 against the appellees his costs by him expended in the prosecution of his appeal aforesaid here, and that in satisfaction of this decree for costs he be allowed retain the amount of said costs and receive credit* therefor on the balance of purchase money owing by him as aforesaid. And this cause is remanded to the circuit court of the county of Spotsylvania, for further proceedings to be had therein in conformity with the opinion and directions herein contained : which is ordered to be certified to the said circuit court.
And it is ordered that this decree be entered on the order book here, and be forthwith certified to the clerk of the court at the place of session where this cause is pending as aforesaid; who shall enter the same on his order book, and certify it to the clerk of the circuit court of Spotsylvania county.
Decree affirmed.