## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

HICKSON v. RUCKER AND ALS.

February 8th, 1883.

1. JUDICIAL SALES—*Caveat emptor.*—In Virginia the maxim *caveat emptor* strictly applies to all judicial sales. Objections for defect in title must be made before confirmation of report of sale. Ordinarily, objections after confirmation come too late.

2. IDEM—*When set aside.*—For fraud, mistake, surprise, or other cause for which equity would give like relief, if the sale had been made by the parties in interest instead of by the court, such sales may, even after confirmation, be set aside, but for no other cause.

3. IDEM.—By buying at such sale the purchaser selects his forum, comes into the case and submits himself to the court as to all questions concerning the sale and his purchase. If objection be had, he should have made the same in that forum before the confirmation.

Appeal from decree of the corporation court of the city of Lynchburg, entered 1st April, 1879, in the cause of Barnes M. Rucker, plaintiff, against George M. Rucker and others, defendants. At the judicial sale of the real estate sold under decree of that court, in that cause, by R. H. G. Kean and C. M. Blackford, special commissioners, John Hickson became the purchaser of six lots for $855. The sale was reported and confirmed without objection. He failed to comply with the terms; a rule was awarded against him; he answered that he should not be compelled to comply with those terms, because he had purchased the lots under an impression produced by the advertisement and maps of the commissioners, that the "fair grounds," fronting those lots, would be cut up into and sold as lots with streets; but that the fair grounds had been sold as a whole, without streets through it, and that the lots were of less value on that

account. The evidence showed that proclamation had been made before the sale on the ground where he was, that those grounds would be sold entire without streets, if adequate price could be had, but if not, then in lots with streets; and that an adequate price had been obtained, and they were sold entire—a fact known to him the day of sale, but which he failed to found objection on until after the sale had been confirmed.

The corporation court required that said Hickson comply with the terms of the sale within sixty days, or else the commissioners resell the lots at his risk. From which decree Hickson appealed to this court.

*W. W. Larkin,* for the appellant.

*W. W. H. Harris,* and *L. M. Kean,* for the appellees.

LACY, J., delivered the opinion of the court.

The appellant was a purchaser at a judicial sale of some lots in the suburbs of the city of Lynchburg. The commissioners named therein, sold under a decree of the corporation court of the said city, entered in the said court in the cause therein of *Rucker* v. *Rucker,* which was a suit for the sale of the lands of the ancestor, and distribution of the proceeds among the heirs. Said decree was rendered on the 18th day of October, 1875.

The sale was made on the 19th and 27th of October, 1876. Appellant purchased lots eight, nine, fourteen, fifteen, nineteen and twenty-three, on the first named day, at the sum of $855 for the whole—the sale to appellant was, along with other sales, reported to the court, and confirmed by the court on the 9th of November, 1876—without objection on the part of appellant, and the said purchaser, the appellant here, not having complied with the terms of sale a rule was awarded against him; this rule not being served, no action was had under it.

On the 8th of June, 1878, another rule was awarded which

was not served, and on the 2d of July following, another rule was awarded returnable the first day of the August term of said court. This rule was served and appellant appeared in response to it, and objected to the sale as to him, upon the ground that the commissioners had advertised the whole land to be sold in lots, and had exhibited at the rooms of the auctioneer, a plat of the land divided into lots and a street running through the whole, from the Salem turnpike, to the road in the rear of the orphan asylum, and had on the day of sale, sold the piece of land next to the road running in the rear of the said asylum, in one body, it being so enclosed and used as a race track in connection with the "agricultural fair grounds," and did not therefore open Rucker street through to the said road running in rear of the said asylum; the said Rucker street was, however, opened from the lots bought by appellant, to the Salem turnpike, a public highway running into the city of Lynchburg, which is the shortest route into said city.

There is no other objection to the regularity of the sale—the commissioners made the sale in accordance with the terms and the directions of the decree conferring their authority, and within the discretion allowed them by the court.

The evidence shows that the sale complained of was made in the yard of, and before the front door of appellant; that he was present all the time, and made his purchases in person; that before the sale commenced, and before the sale was made of the lots purchased by appellant, a proclamation was made that the enclosed land, embraced by the race-track fence, would be sold as a whole, if possible, and if sold as whole, that then, in that case, all streets and alleys laid down on the plat exhibited there, and with the advertisement, as running through the said race-track, would terminate at the said race-track, and not run into or through it, as laid down in the plat. It is also proved that when lot No. 23 was put up for sale, that the red flags used as markers, to designate the boundary of each lot, as offered for sale, showed, when set up around this lot, that the

said lot was next to the said fence around the race-track, and a part of it being cut off by the fence, it appeared to be of a different shape from the others, and that as to this lot, special proclamation was made, that while the lot was sold in this shape, still, if the race-track could not be sold as a whole, but should be sold in lots, then whoever bought this lot should have the privilege of taking enough land to make the said lot rectangular like the others. Appellant purchased lot No. 23. Appellant *says* he did not hear the proclamation concerning the race-track, nor the one concerning this lot, No. 23, but admits that he was present, and bought in person; says he came up while the sale of the first lot was going on and not completed.

Appellant claims that he knew nothing of the purpose to sell the race-track, as a whole, before the sale, but of course he had full knowledge concerning the whole matter after the conclusion of the sale, and yet he allowed himself to be reported to the court as a purchaser at the sale, made no objection to a confirmation of the sale to him, and indeed does not appear in any way until brought into court by the service of a rule upon him, and then makes objection to the sale as stated above.

The principles which govern this case are well settled. In delivering the opinion of the court in the recent case of *Berlin* v. *Melhorn,* reported in 1st Matthews, 639, Judge Burks says: "We think it may be safely laid down, as a general rule deducible from the authorities, that after a judicial sale has been absolutely confirmed by the court which ordered it, it will not be set aside except for fraud, mistake, surprise, or other cause for which equity would give like relief if the sale had been made by the parties in interest instead of by the court."

In the case of *Brock* v. *Rice and others,* reported in 27th Grattan, 812, Judge Staples, in delivering the opinion of the court, says "a decree of confirmation is a judgment of the court which determines the rights of the parties.

Such a decree possesses the same force and effect of any other

adjudication by a court of competent jurisdiction, but before confirmation the whole proceeding is *in fieri* and under the control of the court, until then the accepted bidder is not regarded as a purchaser. His contract is incomplete, and he acquires by his bid no independent right to have it perfected. * * * *

Whether the court will confirm the sale, must, in a great measure, depend upon the circumstances of such particular case. It is difficult to lay down any rule applicable to all cases; nor is it possible to specify all the grounds which will justify the court in withholding its approval." * * * * * * * *

In this case the purchaser had become a purchaser at a judicial sale. In making the purchase, he had submitted himself to the jurisdiction of the court in the cause, as to all matters connected with the sale, or relating to him as purchaser. See *Clarkson* v. *Read and others*, 15 Grat. 288, 291; and if he had objection to make to the sale upon any ground whatever, he had his opportunity, and he should have availed himself of it to state his case in the court he had himself chosen. This he failed to do, and upon default made in complying with the terms of sale, the court having confirmed the sale without objection on his part, the court took the usual course according to the practice of awarding a rule against him, to show cause against a resale at his risk and costs of the land he had purchased. After the confirmation of the sale, he was, in equity, the owner of the land, subject to the lien retained for the purchase money, and he was allowed sixty days within which to comply with the terms of sale, after which, he still being in default, the land should be resold at his risk, and in this case, it was so decreed; and from this decree the appellant appealed to this court.

In Virginia, the maxim, *caveat emptor*, strictly applies to all judicial sales. Objection for defect in the bill must be made before confirming of the report of sale. Ordinarily, objection after confirmation comes too late. See opinion of Burks, J., in *Long* v. *Weller*, 29th Grattan, 351, and numerous cases cited. In *that* case the defence set up by the appellants in their answer to the

rule for a resale was, that at the time they purchased the property they believed that the right to the use of the entire road mentioned in the answer was annexed to the property purchased by them, and that *since the purchase* they have discovered that a claim has been asserted by a third party, which was probably right, and would deprive them of the use of the road, and thus impair the value of the property purchased by them. This court treated that objection as an objection to the title, and applied the principles stated above. The court said: "They purchased at their own risk, and cannot be heard to object for defect of title, at least after confirmation of the sale.

If the purchaser is entitled to any relief in this case, it must be on the ground of fraud, or mistake discovered after confirmation of sale. In such case the confirmation of the sale would not be an insuperable barrier to relief in the absence of *laches*— acquiescence, waiver, or other circumstance rendering relief inequitable." Same case, page 352.

. In this case fraud is not only not charged, but such charge is expressly disclaimed. The appellant in his answer says he brings no charge against the fairness of the sale. Was the mistake, or objection complained of by him, discovered after the confirmation of the sale? Such a conclusion is entirely excluded by the deposition of the appellant himself, for he shows that it was discovered on the day of sale, when the race-track was sold as a whole. Upon the principles stated above, then it was his plain duty to have made his defence in the court before confirmation of the sale, and without unreasonable delay. As we have said, by becoming the purchaser of the land, he had selected his forum, he had chosen to come into that court in that case, and had by that act submitted himself to that court on all questions concerning that sale and his purchase, and if objection be had, he should have made the same in that court before confirmation.

But there is no evidence in this cause that the appellant has suffered any injury; there is no evidence in the record showing,

or tending to show, that the land purchased by appellant is not worth as much as he gave for it; upon that the record is entirely silent. And it is too late after the sale has been confirmed by the court without objection on the part of the purchaser, for the purchaser to come in, in answer to the rule for a resale, and say he never assented to the *terms* of the sale. He assented to the terms by becoming a purchaser, and his mistake as to the terms, if such ever existed, was discovered on the day of sale, and therefore before the confirmation of the sale by the court.

We are of opinion, that there is no error in the decree of the corporation court of Lynchburg, and the same should be affirmed.

DECREE AFFIRMED.