## Richmond.

### REDD AND WIFE V. DYER AND ALS.

#### MAY 19th, 1887.

1. CHANCERY PRACTICE—*Judicial sales— Caveat emptor.*—The maxim *caveat emptor* strictly applies to judicial sales. Purchaser's objections. must, ordinarily, be made before the sale is confirmed. *Smith* v. *Wortham*, 82 Va.

2. IDEM—*Qualification— Mistake—Fraud—Proof.*—But the purchaser is entitled to relief on the ground of after-discovered *mutual* mistake of material facts, or of fraud, which must be clearly proved. *Long* v. *Weller*, 29 Gratt. 347.

3. IDEM—*Re-sale—Account of liens—Objection.*—However erroneous may be a decree to sell land before an account of liens, yet if sale has been so made, and re-sale is decreed for purchaser's failure to pay, it is too late for latter for first time and in appellate court to make the objection.

Appeal from decree of circuit court of Henry county, pronounced October 23d, 1885, in the causes of Thomas G. Dyer against John H. Pharis, trustee, and of James S. Redd and wife against John H. Pharis, commissioner, &c., which were heard together. The decree being adverse to Redd and wife, they appealed. Opinion states the case.

*Whittle & Anderson* and *J. L. Anderson*, for the appellants.

*A. P. Staples*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The case is this: The female appellant was the pur-

chaser of the house and lot in the proceedings mentioned, situate in the town of Martinsville. The sale was made under a decree of the circuit court of Henry county, in the suit of Dyer against Pharis, trustee, and others, and the terms of sale were duly complied with; that is to say, the required cash payment of $100 was made, and two bonds were executed by the purchaser, with surety for the deferred payments of $525 each, payable at six and twelve months from their date. The sale was made in August, 1883, and was duly reported to and confirmed by the court, without objection, at the following October term. And at the same term a receiver was appointed to collect the bonds as they should respectively become due.

At the October term, 1884, the receiver reported to the court that the purchaser was in default in respect of the second and last instalment of the purchase money, which fell due on the thirteenth of August, 1884; whereupon a rule was awarded against the purchaser and her surety, returnable to a later day of the same term, to show cause why a re-sale should not be ordered.

To this rule the purchaser, Mrs. Sallie H. Redd, and her husband, James S. Redd, who are the appellants here, filed their joint and several answer, in which they averred that when the property was exposed to sale, and before the sale was made, the commissioner, Pharis, who conducted the sale, made public proclamation that the title to the property was perfectly clear, "with the exception of the Calloway claim," and that with this understanding the purchase was made. They also averred, that since the sale a claim to the property had been asserted by one William Martin and wife, who had retained counsel to recover it.

The answer then proceeds as follows: Your respondents are advised that a court of equity will not require purchasers at a judicial sale to pay out the purchase money with a cloud upon the property. They therefore ask that

a decree be entered directing "your respondents," within ninety days, to deposit the $525, the last payment for said house and lot, over to the Henry County Bank, subject to any claim that the said William Martin and wife may establish against the property.

At the hearing a decree was entered directing the property to be re-sold within a specified time, unless the balance of purchase money then due, with interest, should be paid. The decree also directed the receiver, out of the fund to come into his hands, to pay certain debts, as directed by a decree in the cause made at the May term, 1883.

The balance of the purchase money not having been paid within the specified time, the property was advertised to be re-sold; and thereupon, the said James S. Redd and Sallie, his wife, filed their bill in the said circuit court for an injunction to prevent the sale. They charged, as they had formerly done in their answer to the rule aforesaid, that the property, when sold, was represented by the commissioner to be unincumbered, and that the title to the same was perfect, "except as to the Calloway claim," and that upon this assurance the property was purchased. They also set forth in the bill, and in detail, the nature of the Martin claim, which, it was alleged, was in no way connected with the Calloway claim. They also complained of the provision in the decree ordering a re-sale, which directed the fund, when collected, to be distributed, averring that if the unpaid instalment of purchase money were paid and distributed as directed by that decree, the result would be, in the event the Martin claim were established, that the purchaser would not only lose the property, but the whole of the purchase money besides. They also averred that they had put improvements on the property amounting in value to $1,400. And the prayer of the bill was that the Martin claim be adjudicated and determined; that the sale be enjoined, and for general relief.

The injunction was awarded as prayed for. The defendant, Pharis, "receiver and special commissioner," demurred to the bill and also answered. He denied that when the sale was made he represented the title to the property to be good, except as to the Calloway claim, as charged in the bill; and he denied that any further statement was made in connection with the title than the public announcement by the crier, on the day of sale, that "the property was involved in the suit of Calloway's Committee against Hairston's Heirs," for which reason, he averred, he recommended the confirmation of the sale at the very low price of $1,150. As to the Martin claim, he averred that he knew nothing, and that the objection of the plaintiffs on that ground, as a defence to the payment of the unpaid purchase money, had been passed upon by the court when set up in their answer to the rule aforesaid.

The said William Martin and Susan, his wife, and their children, who were made defendants, filed their answer to the bill, which they prayed to be taken as a cross bill, in which they charged that the said Susan Martin had a fee simple title to the property in question, and was entitled to recover the same, upon the grounds set forth in the answer.

The two causes were heard together, and at the October term, 1885, the decree complained of was entered. In the cause of Redd and wife against Pharis, commissioner, &c., the injunction was dissolved and the bill dismissed, without prejudice, however, to the defendant, Susan Martin, to assert in a separate suit any claim to the property that she might be advised to assert. And in the cause of Dyer against Pharis, trustee, and others, the property was again ordered to be re-sold, unless within thirty days from the rising of the court the unpaid balance of purchase money should be paid; the terms of sale being the same as those prescribed by the decree of October term, 1884, above re-

ferred to.  From this decree Redd and wife applied for and obtained an appeal and *supersedeas* from one of the judges of this court.

It is contended on behalf of the appellants that the Martin claim ought to have been passed upon and settled before the property was ordered to be re-sold, and that in failing to do so the circuit court erred.  There is no merit, however, in this objection.  It is based upon the idea that if the claim be valid, the title to the property is defective, and that relief should be decreed the purchaser accordingly. This is not in accordance with the settled doctrine relating to judicial sales in this State.  There is perhaps no principle in our jurisprudence more firmly established by repeated decisions of this court, than that the maxim *caveat emptor* strictly applies to judicial sales.

The rule is well stated in *Long* v. *Weller's Ex'or*, 29 Gratt. 347, where it is said : "The court undertakes to sell only the title, such as it is, of the parties to the suit, and it is the duty of the purchaser to ascertain for himself whether the title of these parties may not be impeached or superseded by some other and paramount title; and if he have just grounds of objection for want or defect of title, he should present them to the court before the confirmation of the report of sale."  The court, in that case, referred to numerous cases to the same effect, to which may be added the case of *Hickson* v. *Rucker*, 77 Va. 138, and other later cases.

This doctrine is, of course, subject to the qualification that the purchaser is entitled to relief on the ground of after-discovered mistake of material facts, or fraud.  But the mistake must be mutual; for the mistake of one of the parties occasioned by his own culpable negligence does not entitle him to relief as against the other, who is free from negligence.  *Long* v. *Weller's Ex'or, supra.*  And it is scarcely necessary to say that where fraud or mistake is

relied on by a purchaser, after the sale has been confirmed, it must be clearly and distinctly charged and proved. *Hord's Adm.* v. *Colbert*, 28 Gratt. 49; *Gregory* v. *Peoples*, 80 Va. 355.

The application of these principles is decisive of the present case. Here fraud is not alleged, nor even insinuated; and if there was any mistake at all in respect to the purchase, it was certainly not mutual, nor is it so charged. The allegation in the appellant's bill that the title was represented by the commissioner of sale to be perfect, "except as to the Calloway claim," is distinctly denied in his answer to the bill, and there is no proof whatever on the subject. In short, the case of the appellants, in substance, simply amounts to an allegation that the title to the property is defective; and even if the allegation be true, the alleged defect existed before the sale was made. Clearly, then, they have not been prejudiced by the decree of which they complain.

It is further contended, however, that the circuit court erred in decreeing a re-sale of the property without first having ordered an account of liens to be taken. It is undoubtedly a well-settled general rule, that in a suit to subject real estate to the satisfaction of debts, it is premature and erroneous to decree a sale before an account is taken ascertaining the liens on the land, their amounts and priorities. But does this rule apply to the present case? We are of opinion it does not. No objection on this ground was made by the purchaser before the sale was made, and we are of opinion it is too late for the appellants to raise the objection for the first time in the appellate court, and after the land has been decreed to be re-sold, if even it could have been made before the decree of re-sale. The object of the re-sale is simply to enforce the contract into which the purchaser entered when the sale was made and confirmed; and if the court erred in origi-

nally decreeing a sale without ordering an account of liens to be taken, such error was waived, so far as the purchaser was concerned, by her contract of purchase. The land was bought *cum onere,* at a stipulated price, and she clearly has no right to delay the suit by having the case sent back for an account to be taken. She bought, and got, all that the court undertook to sell. If, even to her detriment, she chose in the first instance to proceed in the dark, she has nobody to blame but herself, and she must abide the consequences of her own act.

Objection is also made to the decree on the ground that it directs a distribution of the purchase money in default before the re-sale, if one is made. This was true in respect to the decree of October term, 1884, directing a re-sale; but no such objectionable provision is contained in the decree of October term, 1885, from which this appeal is taken.

For these reasons, we are of opinion that there is no error in the decree appealed from, and that the same must be affirmed.

DECREE AFFIRMED.