# CHARLESTON.

RUBY L. BUSKIRK, GUARDIAN, *et als. v.* SARAH P. MUSICK, ADMX. *et als.*

(No. 5403.)

Submitted October 21, 1925.　Decided October 27, 1925.

JUDICIAL SALES—*Purchaser of Land at Judicial Sale With Notice of Unpaid Taxes Not Entitled to Abatement for Taxes Due and Unpaid at Time of Sale.*

ιA purchaser of land at a judicial sale, may not have an abatement from the unpaid purchase money, for taxes due and unpaid on said land at the time of sale, which constituted a lien thereon, after a confirmation of said sale and execution of the purchase money notes, when the taxes are not reported in the list of liens against the tract and the commissioner at the time of the sale gives full notice that the taxes will have to be paid by the purchaser, who purchases with a full knowledge thereof.

(Judicial Sales, 35 C. J. § 124.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

100 W. Va.

Appeal from Circuit Court, Mingo County.

Separate suits by Ruby L. Buskirk, as guardian, and others against Sarah P. Musick, administratrix, and others, by Alfred F. Ellis and others against Sarah P. Musick and others, consolidated, in which George R. Buskirk, purchaser of land under decree entered therein, petitioned for an order requiring special commissioners to pay certain taxes on such land out of moneys in their hands and to come into their hands from the sale. From the decree below, the petitioner appeals.

*Affirmed.*

*Poffenbarger, Blue & Dayton,* and *Bias & Chafin,* for appellant.

*Goodykoontz & Slaven,* and *Harry Scherr,* for appellee National Bank of Commerce of Williamson.

WOODS, JUDGE:

George R. Buskirk, at a sale of the real estate of which E. E. Musick died seized and possessed, under a decree entered in two chancery suits consolidated, in each of which he was a party, brought to subject the same to sale for the payment of debts, became the purchaser of the property, at the price of $80,000.00, one-third of which he paid in cash and for the residue of which he executed his two interest bearing notes, each for one-half thereof. At the date of the entry of the decree of sale, and at the date of the sale, there were liens on the property for the taxes thereon for the year 1922, amounting, without interest, to the sum of $2,113.65, and for the year 1923, amounting, without interest, to the sum of $1,863.25. The decree of sale was silent as to these tax liens. The report of the sale was likewise silent concerning them. No reference was made to them in the decree entered at the January term, 1924, confirming the sale. The appellant raised no objection to the payment of the taxes prior to or at the time of confirmation thereof. Maintaining that he was entitled to a clear title to the property, on payment of

the purchase price, the purchaser insisted that the taxes should be paid out of the purchase money in the hands of the special commissioners in cash and notes.   Thereafter, at either the succeeding May or July term, 1924, he filed his petition for an order requiring them to pay to the sheriff of Mingo county and the Auditor of the State of West Virginia the taxes on the land for said years, out of the moneys in their hands and to come into their hands from said sale.   All parties to the suits consolidated and the creditors in whose favor liens had been adjudicated therein, were made parties to it and process thereon taken against them.   Certain creditors filed their joint demurrer to the petition, and their joint answer thereto. By their demurrer, they interposed the confirmation of the sale before the filing of the petition, as their principal grounds of defense.   By their answer, they denied the right to the re-lief sought by the petitioner, on the ground stated in their de-murrer, and averred as further grounds of defense: (1) Knowledge of the existence of the tax lien, on the part of the petitioner, at and before his purchase of the property; (2) lack of power or jurisdiction in the court to adjudicate the tax liens and provide for payment thereof; (3) express verbal notice to him at the sale and before his purchase, given by the special commissioners making the sale, that the pur-chaser would take the property subject to the tax liens there-on, and also such notice that, in the opinion of the judge of the circuit court of Mingo county, that such would be the legal effect of the sale; and (4) an express and verbal agree-ment, at the time of the sale or immediately thereafter, and before it was reported, to take the property subject to the taxes, or to pay the taxes in addition to the amount bid by him, as the purchase price of the land.   To so much of the answer as averred a verbal agreement on the part of the peti-tioner to take the property subject to the taxes, or to pay the taxes in addition to the amount of his bid for the land, he excepted and moved the court to strike it out; and, the court having overruled his exception and motion, he replied gener-ally to the answer and also filed his special replication thereto.

Briefly, so much of the uncontroverted testimony in addi-tion to the facts already set out, as is germane to the question

involved is: While the sale was in progress at the front door of the court house, Mr. Buskirk asked the special commissioner, who was then crying the sale, who would pay the taxes for the years 1922 and 1923. The matter was discussed by the three special commissioners, in the presence of Buskirk, who had been bidding on the property, and one of the commissioners was sent to Judge Bailey, then sitting in regular term, to ask him to advise the commissioners in the premises. In the meantime, the commissioners had stated to Buskirk that the purchaser should pay the taxes. After consulting with Judge Bailey, who concurred in the position assumed by the commissioners, it was then announced, publicly, by the commissioner making the sale, that the taxes for those years were unpaid and that the purchaser would be expected to pay them, over and above the purchase price for the land. Bidding was then resumed and at the noon recess Buskirk was the highest bidder for the land as a whole. The commissioners having resumed the sale after lunch, a conference was held at which were present the appellant, George R. Buskirk, the then highest bidder, the three special commissioners, and others. After the conference George R. Buskirk increased his bid to $80,000.00, after it had been stated, again, by the commissioners that the sum should be exclusive of the unpaid taxes. It is also in evidence that the amount of purchase money received for the land will not pay creditors under the decree. Therefore, allowance to appellant of taxes will take away from lien creditors to that extent—will leave additional debts unpaid to the amount of the taxes.

The first question that arises is whether confirmation of a judicial sale, no deed to the purchaser having been made, precludes the purchaser from relief against curable defects in title or against encumbrances thereon. The court undertakes to sell only the title, such as it is, of the parties to the suit. It is the duty of the purchaser to look to the title of the parties in the cause. Courts of chancery employ their officers to investigate titles but not to warrant them. *Toulmin* v. *Steere,* 3 Meriv R. 223, Lord Chancellor Eldon's opinion. If the purchaser have just grounds of objection for want or defect of title he should present them to the court before the

confirmation of sale.    Ordinarily .objection after confir-
mation comes too late.   *Headley* v. *Hoopengarner,* 60 W.
Va. 626; *Fleming* v. *Holt,* 12 W. Va. 143; *Capehart* v. *Dow-
ery,* 10 W. Va. 130; *Redd* v. *Dyer,* 83 Va. 331; *Hickson* v.
*Rucker,* 77 Va. 139; *Long* v. *Weller,* 29 Gratt. 347; *Threlkelds*
v. *Campbell,* 2 Gratt. 198.   The latest expression on this ques-
tion by this court. is that of *Young* v. *Smith,* 88 W. Va. 445.
The claim asserted by the appellants in that case was the
right of abatement of unpaid purchase money of standing
timber judicially sold by the acre, on the ground of failure of
title to part of the timber.   The court there discussed the
rule of *caveat emptor,* in its application to states of fact like
or similar to those in that case, stating that the harshness of
the rule was more apparent than real, when it is considered
that it does not bind the purchaser beyond his knowledge or
means of knowledge.   The exact question that we have here
was exhaustively discussed.   The cases heretofore referred to
were reviewed, as well as the following cases: *Castleman's
Adm'r.* v. *Castleman,* 67 W. Va. 407; *Calvert* v. *Ash,* 47 W.
Va. 480; *Crislip* v. *Cain,* 19 W. Va. 438; *Shields* v. *McClung,*
6 W. Va. 79; *Watson* v. *Hoy,* 28 Gratt. 698; *Jones* v. *Tatum,*
19 Gratt. 720; *Cooper* v. *Hepburn,* 15 Gratt. 551; *Young* v.
*McClung,* 9 Gratt. 336; *Worsham* v. *Hardaway,* 5 Gratt. 60;
*Finley* v. *U. S. Bank,* 11 Wheat. (U. S.) 304; *Farmers' Bank*
v. *Peter,* 13 Bush (Ky.) 591; 11 Corpus Juris 44 and 24 Cyc.
57, citing many cases.   The court there stated the law to be:
''In case of such a sale, abatement from unpaid purchase
money may be had, also, for a deficiency in the quantity of the
land, due to a lack of title to a portion thereof, in the person
in whose name it was sold, on discovery thereof and demand
for abatement after the confirmation of the sale, *if the pur-
chase was made in ignorance of such want of title.''*   The ap-
pellant seeks to avoid the force of this decision by calling at-
tention to the fact that a deed had followed the confirmation
before objection was made to the defect in title, citing *Daniel*
v. *Leitch,* 13 Gratt. 195.   The rule in this state, is that *after
confirmation,* though the purchaser *before the deed is made
to him,* finds out that the title to the land is defective, he is

nevertheless bound to receive it, and pay the purchase money. *Fleming* v. *Holt, supra.*

The next inquiry involves the rights of a purchaser, respecting taxes on land judicially sold. The only West Virginia case cited by appellant on this point is that of *Camden* v. *Haymond*, 9 W. Va. 680. There it was held that taxes on land accruing while it is being rented out under the order of the court, should be paid out of the rent. It was merely incidental to the management of the property in the hands of the court, and was an act for the protection and preservation of the property, such as is accorded to a receiver. It is a well recognized principle of law' that a receiver is authorized to perform any act to preserve the property and give it additional value, for the benefit and protection of those for whom it is held and administered by the court. Code, chap. 133, sec. 28; *Gilbert* v. *Washington City R. R.*, 33 Gratt. 586. It is seen that the Camden case throws no light on the question involved in the instant case. Other cases cited by appellant in support of his contention are: *Vicksburg* v. *Vicksburg*, 80 Miss. 68; *Taylor* v. *Fitzsimmons*, 19 Ky. Law Rep. 583, 41 S. W. 263; *Myers* v. *Lindsay*, 5 Lea (Tenn.) 331; *Swindell* v. *Richey*, 41 Ind. 281; *Everett* v. *Dilley*, 39 Kan. 73; *Skinner* v. *Christie*, 82 N. J. Eq. 720. In the Mississippi case there was no judicial sale. The parties entered into a contract to sell property free from all liability. The court merely held that under the terms of the contract the seller was required to pay the taxes which operated as a lien upon the property. The Kentucky case only involved the payment of taxes as between vendor and vendee in a private contract for the sale of lands. The statute, sec. 4023, code, which provided for the payment of taxes as between vendor and purchaser, in the absence of contract, was there applied. In the Tennessee case, the statute in effect at that time was likewise applied. There, Shannon's Code, sec. 969, provides: "Whenever real estate is sold under a decree of any court in the state, it shall be the duty of the judge of the court, before the sale is confirmed to the purchaser, to have a reference, made to the clerk or clerk and master, to ascertain if, upon the day of sale, there were any taxes due and unpaid which were a lien upon said real

estate, and, if it is found that there were taxes that were a
lien upon the real estate, upon the day of sale, a decree shall
be entered in the cause stating the amount of taxes, and di-
recting the clerk and master or clerk to pay said taxes out
of the first money collected from the sale of the said real es-
tate.'' In the Indiana case, it appeared that the owners of
the land, and for whose benefit the sale was made, were pres-
ent at the sale, and to induce the purchaser to purchase the
land, agreed with him before, and at the time of the sale,
that if he would become the purchaser, they would pay all
taxes made and levied upon the land and that he should have
and hold the land clear and free from such tax levy. The
purchaser relied upon the agreement and purchased the land,
and the owners derived the benefits. It was held that the tax
by reason of such agreement might be set off as a credit on
the purchase money. The Kansas case only decided that the
statute (See Revised Statutes, chap. 79, sec. 1805) deter-
mined as between vendor and vendee of real estate sold, in
the absence of special agreement between the parties concern-
ing them, by whom the taxes should be paid. In the New
Jersey case it appears that at the date of the conveyance by
one Boyd to plaintiff, the premises were subject to the lien
of arrears for taxes, amounting to nearly $800.00; that the
written contract between the parties provided that the prop-
erty was to be sold free from encumbrance; and that Boyd
fraudulently concealed the existence of this lien for the un-
paid taxes, and managed to induce the plaintiff to accept a
deed for the premises without any covenants against encum-
brances. The facts in that case need only to be stated to
show that it is aside from the question raised here. From a
consideration of the foregoing authorities, we are inevitably
led to the conclusion, that in the absence of a statute in our
state fixing liability, a lien for taxes existing upon property
sold at judicial sale, will be treated as any other lien or en-
cumbrance existing thereon at the time of the sale.

The evidence of what took place at the time of the sale,
while of doubtful admissibility to prove an express verbal
agreement of the purchaser to take the property subject to
the taxes, may properly be considered on the question of

showing that the purchaser bought with notice of the unpaid taxes. This evidence is clear and convincing that the purchaser, Buskirk, not only knew that the taxes were unpaid and had not been provided for, but that the purchaser was expected to pay them, in addition to the purchase price; and with this notice and knowledge, appellant permitted the sale to be confirmed to him, and the then term of court to adjourn, before raising the question. The purchaser here might have applied to the court to set the sale aside and not confirm it to his prejudice. It is alleged that he was not bound to do so. The authorities are united to the effect that the buyer at judicial sales, must by all reasonable and accessible means, protect himself. This rule, while applying to all purchasers, should be applied with still greater stringency where it appears that the purchaser was a party to the suit and hence must have had cognizance of all the facts and circumstances within the particular case and without. Why did not Buskirk take some steps to secure a report from the commissioner as to the status of the taxes on the land? The statute permits a report on any pertinent matter to be made at the instance of any party in interest. Right here we may add that it would be a good practice in all such cases, and one that would prevent any misunderstanding respecting the rights of the parties, to settle the question as to taxes in the decree ordering sale.

The land was sold at public out-cry that the taxes were to be paid by the purchaser. It is fair to presume that the creditors acted in the protection of their interests at the sale in the light of that understanding. Had it been known that the taxes were to come out of the fund arising from the sale some of them might have desired to bid enough to make the property pay their debts. Had the matter been brought to the attention of the court before confirmation thereof, a resale might have been ordered, if the chancellor had thought it proper, and thus afforded the creditors an opportunity to protect their interests. The purchaser here, however, would both hold to his bargain and get relief. He did not speak when he should have spoken. Equity will not hear him speak now when he would.

The authorities in this state, as we have shown, uniformly hold to the effect that the purchaser at a judicial sale cannot be permitted after confirmation thereof, to take advantage of some encumbrance or defect in title of which he had notice. The decree must be affirmed.

*Affirmed.*