## Richmond.

THOMAS v. DAVIDSON.

March 23, 1882.

1. JUDICIAL SALES—*Proceedings.*—Objections to confirmations founded on errors and irregularities in the proceedings, should be made in the court below, as the same might, on timely notice, have been remedied.
2. IDEM—*Defect of title.*—General rule in Virginia is, that objections by purchaser for defect of title should be made before sale is confirmed, and such objections, made afterward, come too late, except in cases of after-discovered mistake, fraud, and the like. *Watson* v. *Hoy and als.*, 28 Gratt. 698.
3. IDEM—*Reference.*—In Virginia it is not the universal rule to refer to a commissioner to report on the title, though such reference may be proper where the title is doubtful and obscure or depending upon matters *in pais.*
4. Circumstances warranting that the purchaser should be compelled to comply with the terms of the sale.

Appeal from decree of circuit court of Richmond city rendered 12th December, 1881, on proceedings had on petition filed by James M. Davidson, and James M. Dill, guardian of John G. Davidson, infant child of John Davidson, deceased, *against* Putney & Watts and others, the petition having been filed in the suit of *Miller's Ex'or* v. *The Board of the Literary Fund and others.* James M. Davidson acquired under the will of Samuel Miller, deceased, and subsequent compromises, an undivided moiety of two houses and lots in said city, for his life, remainder to his issue living at his death, if any, and if none, to himself in fee.

John Davidson acquired the other moiety under like conditions, but dying, it descended on his infant son John G. Davidson. James M. Davidson conveyed the reversion of

his moiety, contingent on his dying without issue living at his death, to R. G. H. Kean, John B. Robinson, C. L. Mosby and Edward S. Brown, being the interest conveyed to him by the compromise. Mosby died leaving several infant heirs. On proceedings instituted by James M. Davidson and James Dill, guardian as aforesaid (to which Kean, Mosby's infants and the other vendees of said reversion were not at first parties), the houses and lots were decreed to be sold. James Thomas bought one at $18,005, and the other at $28,000. The sale was reported. Thomas refused to comply with the terms of the sale. A rule was awarded against him to show cause why he should not be compelled to comply. To the rule he answered that the title was defective in that, *first*, there were on the property six unreleased trust deeds duly recorded as of 1817, 1818, 1819, 1832, 1841 and 1843, respectively; *secondly*, the reversion in one moiety was outstanding in K. and in the infant heirs of C. L. M. and others not parties to the suit; and, *lastly*, nine feet of one of the lots had been set apart and used as an alley in common. The proceedings were amended so as to cure the second specification. The record discloses that M. and those claiming under him, had, since March, 1845, actual, continued, notorious and adverse possession of both lots, including the alley, whereon the houses are, under deeds duly recorded.

After the sale was confirmed, Thomas prayed the circuit court for a reference to a commissioner to report on the title, but made then no objections to the confirmation of the sale on the ground of irregularities in the same. The court confirmed the sale, and refused to refer the case to a commissioner to report on the title, in an elaborate opinion, which is set forth in full in the record.

From the decision confirming the sale, Thomas obtained an appeal to this court. The other facts are sufficiently set forth in the opinion of Judge Staples.

*John A. Meredith* and *Douglas Wortham,* for appellant.

*Sheffey & Bumgardner* and *W. W. & Bev. T. Crump,* for appellee.

STAPLES, J., delivered the opinion of the court.

The sole question in this case is, whether the appellant ought to be released from his purchase of two tenements on Main street, in the city of Richmond. These tenements belonged to the estate of Samuel Miller, deceased. They were sold under a decree of the circuit court of said city on the 25th of June, 1881, and were purchased by the appellant—one of them at the price of $28,000, and the other at $18,000. The appellant declined to comply with the terms of sale, upon the ground of a defect in the title to the property, which he stated at length in his answer to the rule issued against him. The learned judge of the circuit court held that the objections of the appellant were not well taken, and in a well-considered opinion he set forth the reasons upon which his conclusions were based. I do not deem it necessary here to restate these reasons, or even to make an attempt to add to them. In my judgment they conclusively establish that the alleged defects furnish no reasonable ground of apprehension on the part of the appellant, and that Mr. Samuel Miller's title to the property was clear and unquestionable. I content myself, therefore, with referring to the opinion as containing all that is necessary to be said on that branch of the case.

The petition for appeal, however, suggests a number of objections not stated in the answer of the appellant, founded mainly upon alleged irregularities in the proceedings in the court below. These will now be considered.

In the first place, it is insisted that the property was sus-

ceptible of a just and fair partition between the parties; a sale was therefore irregular and improper, and inasmuch as the rights of infants are involved, the decree is liable to a reversal upon their arrival at maturity.

The appellant did not introduce any testimony in support of his assertion that the property might be conveniently divided in kind. He made no such point in opposition to a confirmation of sale; nor did he even suggest the objection in the court below. His counsel now attempts, by a process of ingenious argument, to show that partition might and ought to have been made. The utter impracticability of such a course appears throughout the entire record, and is demonstrated by the fact that the two tenements were of such unequal value that neither could have been allotted to one of the parties without involving the payment of a large sum of money by way of compensation. The appellees, however, for the purpose of setting at rest every difficulty upon this point, examined two witnesses, citizens of Richmond, engaged in the real estate business and well acquainted with the property. These witnesses prove that it is not susceptible of convenient partition, and that the interests of all parties will be promoted by a sale. This evidence, in the absence of any countervailing testimony, must be deemed conclusive of the point involved.

Again, it is insisted that the deed of trust executed by James M. Davidson for the benefit of Messrs. Kean, Robertson, and others, constituted an incumbrance upon the property; and although this incumbrance has been since removed, the court ought not to compel the appellant to complete his purchase, because the existence of the incumbrance was known to the appellees and was concealed by them at the time of the sale.

All the circumstances considered, this objection, to say the least, is very surprising. When the appellees filed

their petition, asking for the sale of the property, they made no allusion to the deed of trust for the simple reason, as they state, that conveying, as it did, a mere contingent, reversionary interest, it was believed to constitute no obstacle in the way of a valid sale. So soon as the appellant suggested the difficulty, the adult appellees proceeded without delay to obviate it. This was effected in a very short time, and thereupon the appellees filed their amended and supplemental petition, in which they stated that the beneficiaries under the deed had given their consent to the sale, as was shown by their answer, then filed and made part of the record. So that, at the utmost, not more than a few weeks had elapsed from the time the doubt upon the title was suggested to the time of its removal, and this was done in conformity with the declaration of the appellant, made in his answer, that he was ready and willing to take the property and comply with the terms of sale, provided he could get a clear title.

Besides all this, the appellant was made a party to the amended and supplemental petition; he was then informed of the steps that had been taken to obviate his objections. He did not take the trouble even to file an answer; and he permitted the sale to be confirmed without objection, or the expression of the slightest dissatisfaction with the course of proceeding. The existence of the deed of trust was not fraudulently or deliberately concealed from the appellant; it was at best the result of mere inadvertence or mistake. It caused him no injury, nor did it induce him in any manner to change his line of conduct, or create any delay in the proceedings in the court below.

The discretion of the chancery court in allowing parties time to perfect their titles by curing defects and removing incumbrances is constantly exercised where no unusual delay ensues or loss to the purchaser occurs. And this is more especially true where the sale is made under the

sanction of the court itself. The principles which govern in this class of cases are fully discussed in *Young's Adm'r and Bowyer* v. *McClung*, 9th Gratt. 336, and *Daniel* v. *Leitch*, 13 Gratt. 195, and other decisions of this court.

Another objection is, that no reference was made to a commissioner to ascertain the condition of the title, and this objection is reiterated again and again, as though the omission affected the decree of sale.

According to the English practice, either party may have the report of a commissioner upon the title, and there is great advantage in this practice, because there the commissioners are men learned in the law and thoroughly conversant with such questions.

But in Virginia the rule is not universal, and a reference to a commissioner is often refused where the facts are all before the court, and the only effect would be to burden the parties with unnecessary costs. There is no settled rule of practice in this State on the subject. A reference to a commissioner may be very proper, and is often had where the title is doubtful and obscure, or depending upon matters *in pais*. But when the court is in full possession of all the evidence, no possible advantage can result from an enquiry by a commissioner. *Goddin* v. *Vaughn's Ex'or and als.*, 14 Gratt. 102, 128.

In the case before us, it is not suggested that any further information could have been obtained by further enquiry. All the evidence, which was almost exclusively documentary, was before the court. Upon this evidence, the court was certainly as competent to adjudicate the question of title as any commissioner would be, who might have been appointed.

A report adverse to the title, it is fair to presume, would not have brought the learned judge to a different conclusion. A report favorable to it would only have subjected the parties to additional costs without any corresponding advantage.

These considerations are sufficient to show that the court committed no error in refusing to refer the question of title to a commissioner.

From what has been already said, it will be seen that nearly all the appellant's objections, here considered, are founded upon supposed irregularities in the court below. With respect to all such objections, it is the duty of the purchaser to bring them to the attention of the court before the confirmation of the sale, that the parties or the court may have an opportunity of correcting them.

After the confirmation, a complete contract has been made between the court and the purchaser, and the latter will not be heard to make objections founded upon the errors in the proceedings which might have been remedied by timely notice.

This rule is constantly enforced in behalf of infant parties, where it appears that the sale is manifestly for their benefit. *Cooper* v. *Hepburn*, 15 Gratt. 566; *Watson* v. *Hoy and als.*, 28 Gratt. 698.

Upon the whole case, I think there is no error in the decree, and the same should be affirmed.

DECREE AFFIRMED.