## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### NUTT v. SUMMERS AND ALS.

December 13th, 1883.

1. APPELLATE COURT—*Accounts—Errors on face.*—Though in court below, no exception has been filed, yet if errors be apparent on face of report, the appellate court will notice them.

2. PERSONAL DEFENCES.—Where debtor is entitled to plead pleas of personal defence, or privilege, such as infancy, &c., and chooses not to plead them, his creditors, however much such pleas might benefit them, can neither compel him to present, nor can they themselves for him present, such pleas in defence against a claim which has preference over theirs.

3. LIENS—*Res judicata—Priorities—Gold premiums—Legal tender—Personal privilege—Case at bar.*—In 1856, N sold and conveyed for gold land to R H D and J W D, who re-conveyed same to secure purchase money. In 1866, R H D was released, and the land was conveyed to J W D, who re-conveyed it to secure the purchase money, which was expressly made payable in gold, or its equivalent. By decision of this court, in *Summers* v. *Darne,* 31 Gratt. 791, it became *res judicata* that this arrangement was no novation of the debt, and that N's lien was superior to the lien of judgments obtained against J W D, between the trust deed of 1856 and the trust deed of 1866. At the sale of the land under the second deed of trust, N purchased it at a ·sum equal to the amount of his debt, including principal, interest and gold premiums.

HELD:

1. N is entitled to his lien for the gold premiums as well as for the principal and interest.

2. As judgment creditors can acquire no more nor better rights to a debtor's lands than the debtor himself has, N has priority over such creditors for the gold premiums also.

3. Even if under the legal tender act of congress, J W D had the right to pay the debt to N in currency of the United States, however much depreciated, yet it appears that that right was a mere personal privilege, which he was not obliged to exercise, and that his creditors can neither exercise it for him nor compel him to exercise it.

Appeal from decree of circuit court of Loudoun county, rendered in May, 1881, in a certain cause wherein R. H. Summers is complainant, and William D. Nutt and others are defendants. This is the sequel to the cause of *Summers* v. *Darne and als.*, 31 Gratt. 791.

Opinion states the case.

*W. W. & B. T. Crump*, for the appellant.

*J. M. Orr*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

This case comes up upon an appeal from a decree of the circuit court of Loudoun county, rendered in May, 1881, and is the sequel to the case of *Summers* v. *Darne*, heretofore decided by this court and reported in 31 Gratt. 791.

The case is this: A debt is created in 1852, payable, as the law then was, in gold. Not having been paid when due, in 1866, when the currency was below par and fluctuating, a settlement occurs between the creditor and the two debtors, whereby one of the debtors is released and further time is given the other; and the amount then due being ascertained, and a cash payment being made, two new bonds, each for one-half of the balance, and payable in two and three years, respectively, with interest payable semiannually, are given; and recognizing the debt as still a gold debt, it is stipulated in the bonds that there shall be paid to the creditor a sum in currency which will, when

the bonds fall due, buy gold coin to the amount specified in the bonds. To secure these bonds a deed of trust is executed by the debtor, just as there had been a deed of trust executed to secure the debt when first created in 1856.

In the case of *Summers* v. *Darne, supra,* this court held that the transaction in 1866 was not a novation of the debt of 1856, nor a release of the deed of trust then executed, but a continuation thereof, so that the original lien lost none of its priority as such for the amount which the creditor might justly claim.

The question then arises: Is the creditor entitled to a lien for the gold premium as well as for the residue of his debt as against judgment creditors of the same debtor, whose lien attached to the trust subject between the dates of the two deeds of trust?

As against his debtor, there can be doubt that he would be so entitled, by virtue, at least, of the stipulation in the contract. But have the intermediate lienors of that debtor rights any more extended than those possessed by the debtor? The answer to this question must substantially decide this case. And the answer to this question will be more readily solved by a brief recital of the facts and circumstances of the case as disclosed by the record.

In January, 1856, Wm. D. Nutt, the appellant here, sold and conveyed to R. H. and J. W. Darne a tract of land in Loudoun county containing 213 acres, for $400 cash and $1,900 in four equal instalments, with interest payable semi-annually. The purchasers conveyed the land to Randolph and McLean, trustees, to secure the deferred instalments, which were payable in gold.

In 1861 R. H. Summers obtained four judgments against J. W. Darne, one of the purchasers from Nutt. The Darnes failed to make the deferred payments. Richard Darne applied for relief; but James Darne thought he could make the payments if he could obtain an extension of time. In

September, 1866, Richard was released, and James undertook to pay the whole debt, and paid $242 cash on the debt, which then amounted to $2,242, and executed his two bonds for $1,000 each, payable in two and three years, respectively, to Nutt, in gold or its equivalent in currency, with interest payable semi-annually; and it was stipulated in the bonds that if it should not be convenient for said James Darne to pay in gold coin, he should pay in lieu thereof such amount in currency as would purchase the stipulated sum in gold, at the closing rate of gold at the board in New York, on the last business day before the 1st day of September, 1868.

Richard Darne and the trustees, Randolph and McLean, united with Nutt in conveying the land to James Darne, who thereupon conveyed the same to Maguire, in trust to secure said two $1,000 bonds. Default being made, on the 23d day of May, 1870, the trustee, Maguire, sold the land after due advertisement, and Nutt became the purchaser; and he supposing no question could arise as to his rights, and that he would be unable to realize any deficit from James Darne, reckoned up his debt, including principal, interest and gold premiums, and bid the land in at a sum ($2,800) about equal to its discharge, and the trustee conveyed the land to him.

About one month thereafter, in June, 1870, Summers instituted his suit against James Darne, Nutt and others to subject this land to his judgment liens, insisting that the transaction of 1866 was such a novation of Nutt's claim as made his (Summer's) liens paramount. A controversy ensued, which came before this court on an appeal in said case of *Summers* v. *Darne*, and it was held that the transaction of 1866 did not constitute a novation of the debt, and that it was still a debt due for the purchase money of the land and had priority over said judgments. On this point, delivering the opinion of the court, Staples, J., said: "By the new arrangement Richard H. Darne was released, and James

W. Darne executed his two bonds to Nutt, secured by the trust deed bearing date the 1st September, 1866, each for $1,000 in gold coin, one payable in two and the other in three years, bearing semi-annual interest, and another note for $242, with interest from date. The parties, it seems, considered the original debt as payable in gold, and in 1866, when the new arrangement was made, the federal currency was not only greatly depreciated, but subject to constant fluctuations. They therefore stipulated that as the debt was originally a specie debt, it should retain that character throughout. The only substantial change made was the release of one of the parties, and in the agreement to give still further indulgence. It is easy to see, however, that it is the same debt due for the purchase of the land, never paid or extinguished. And it has been so treated throughout."

The judge, delivering the opinion of this court, also referred to the fact that it had been argued that the trust deed of 1866 secured to Nutt advantages to which he was not justly entitled under the trust deed of 1856; that by the new arrangement, the interest had been compounded, and a gold premium provided for, the effect whereof was to give Nutt $2,780 in currency against a principal of $1,900 in currency, and that this excess was interposed after the liens of Summers had attached.

It is true the court did not deem it necessary to determine whether or not that point was well taken, for the question did not then properly arise, the case then being before the court on an appeal from a decree granting a rehearing. The question then for decision was whether the rehearing was proper. When the case went back to the lower court, it would ascertain the amount justly due William D. Nutt, the cause being remanded for further proceedings.

On the 30th day of December, 1880, the commissioner,

appointed theretofore for the purpose, reported among the liens on James W. Darne's land, the debt secured to Wm. D. Nutt at $2,000, and the interest plus the gold premiums, at the dates the bonds were payable, which amounted to $780. He credited the debt by the amount bid at the trustee's sale, and found a balance due Nutt of $184.95. To this report exceptions were filed, only one of which, No. 2, need be referred to here; which exception is this:

"Because the commissioner reports the two amounts of gold premiums, viz: $445, and $335, as parts of the debt having priority over the judgment liens of R. H. Summers, under the deed of trust of 1856."

At the hearing, this exception was sustained, and the commissioner was instructed to restate his account, omitting said items of gold premium, and showing what was due on Nutt's bid for said land after deducting from his claim the amount of said premiums.

The reformed report charged Nutt with $967.80, and on the same day it was returned, the court entered a decree confirming the same, ordering Wm. D. Nutt to pay the said sum of $967.80 to the judgment creditors of Darne as prescribed, and entitling him to credit the amount so paid on his purchase from Maguire, trustee.

In January, 1881, by leave, Nutt filed his petition for a rehearing of the case on six grounds, only two of which need be noticed, to-wit:

"2. To reconsider and rescind the order disallowing the gold premiums," and

"3. To revoke the personal judgments made against Nutt, to fix the liability on the land and sell it without regard to the original sale made by Maguire."

After answer by Summers and the other judgment-lien creditors, the court below dismissed the petition, re-entered the former decree, and directed a sale of the land, unless Nutt paid the amount charged against him in the report

within ninety days. And it was from that decree that Wm. D. Nutt obtained an appeal to this court.

The enquiry primarily of course is, should the rehearing have been allowed? But underlying this enquiry is the question: " Is Wm. D. Nutt entitled to a lien for the gold premiums, as well as for the residue of his debt, as against R. H. Summers and the other judgment creditors of James W. Darne, whose liens attached between the dates of the trust deeds of 1856 and 1866 ?" And if that question should be answered in the negative, still there will arise another question, to-wit; " To prevent gross injustice, should not the sale by Maguire, trustee, be set aside, and a new sale directed, and the proceeds applied to the satisfaction of the several liens in the order of their priority ?"

For convenience, the last query will be first considered. It must be borne in mind that the sale was not a judicial, but a sale *in pais,* by a trustee. To such a sale the maxim *caveat emptor* does not apply with the force and emphasis with which it applies to sales made under decrees of court, regularly reported and confirmed. But the application of that maxim is not appropriate even to judicial sales, reported and confirmed though they may be, where the purchaser did not have full knowledge, or at least an opportunity for such knowledge, of all the facts connected with the title, or where he was led to make the purchase by mistake, fraud or surprise. *Watson* v. *Hoy and als.,* 28 Gratt. 698; *Thomas* v. *Davidson,* 76 Va. 338; and *Boyce* v. *Strother and als.,* 76 Va., 862.

Still less does the rule apply to a sale by a trustee, never reported, never confirmed, and made under circumstances of manifest mistake and surprise, as in the case under consideration.

Let it be remembered that Wm. D. Nutt had been the owner of the land in question. He had sold it and conveyed it, it is true, but he had never been paid the purchase

money, and his trust deeds to secure it were of record in the same county where the judgment liens were docketed, and where the owners thereof resided. Not only was the trust deed of 1856, but also that of 1866, was there recorded, in which the terms of settlement with James W. Darne were recited, setting forth not only the release of Richard H. Darne and extension of payment, but also the compounding of the accrued interest and the adjustment of the depreciation of currency. Against these terms of settlement and adjustment not a whisper of complaint had ever been heard from either James W. Darne or his judgment creditors, until after the trustee, Maguire, sold and Nutt became the purchaser of the land in May, 1870, and then for the first time after all this period of quiescence, all at once this judgment creditor became clamorous in the assertion of liens as prior and superior to Nutt's claim. Why did they not speak sooner? Were they waiting to entrap Nutt, and in that way share in the proceeds of a sale at a price they were unwilling to give, or which they knew the land was not worth?

Nutt's whole conduct was natural and just, and not calculated to do harm to any one. So believing and intending, and supposing he could realize out of Darne nothing but what the land would bring, Nutt reckoned up the amount he was entitled to under his contract and bid in, or rather took back, the land at such sum. In so doing it is evident that he had no thought or expectation that any dispute would or could ever arise, either as to the amount of his debt or as to liens of judgment creditors. Those creditors, had they so desired, could have enjoined the sale, demanedd an account of liens, had all questions as to amount and priority settled, and a sale made with full notice of all their rights in that respect. Had Nutt's lien been either postponed, or reduced by the amount of the gold premiums, he would have understood his situation and regulated his

bid for the land accordingly. But the judgment creditors allow him to buy at the price of $2,800, on the supposition that that sum was within the bounds of his debt; then to assail not only the amount, but the priority of his lien, was to create circumstances of mistake and surprise such as would entitle him to a cancellation of the sale, and a new sale to satisfy the several liens according to their priorities. Such would seem to be the unavoidable and necessary answer to the said second enquiry, though not necessary for the purposes of this case, which must go off on the question first propounded respecting Nutt's rights to the gold premiums.

As to the first question, "Is Wm. D. Nutt entitled to a lien for the gold premiums, as well as for the residue of his debt?" we are unhesitatingly of opinion that he is so entitled, not only as against James W. Darne, but also against the said judgment creditors of said Darne, whose liens attached between the dates of said trust deeds.

It is not intended to intimate that James W. Darne had the power at any time after those judgment liens attached to impose new or additional obligations on the land, and thus impair its value as a security to the judgment lien creditors. By the new arrangement of 1866, he did not create any new or additional obligation. The purchase money which he owed Nutt and to secure which he executed the trust deed of 1856, was originally payable in gold. That it should be so paid was the obligation of Darne, inherent in the contract under the law when it was entered into. It is true that under the legal tender acts of Congress, he was, in 1866, legally entitled to pay that debt in legal tender currency of the United States, however much depreciated, but he was not obliged, he was under no compulsion, moral or legal, to pay that debt, originally a gold debt, in such currency. The act of congress might and did, while in force, oblige Nutt to receive it if tendered. That

act did not require Darne to make such tender. He had the option to pay, and it would appear he was morally bound to pay, that debt in gold, and he elected so to do. If the law did not deprive him of his right to keep his contract as originally made, surely his judgment creditors had no authority to do so. It was evidently in this view that this court, when the case was formerly before it, declared that said new arrangement of 1866 was no novation of the original contract. If it was not a novation, upon what conceivable ground can the debt thereby secured be split up, and one part of it held to be a prior lien, while the other part is postponed to the judgment liens? It is apparent that on the material question of novation this court has heretofore passed in clear, specific terms—it is *res judicata*.

In the initial paragraph of the opinion of this court, already quoted, Staples, J., says: "This court has decided in numerous cases that where no statutory enactment intervenes, the judgment creditor can acquire no better right to his debtor's estate than the latter himself has. The creditor takes the property or applies it to the satisfaction of his lien in subordination to all the equities which exist at the time in favor of third persons, and a court of chancery will limit the lien of the judgment to the actual interest the debtor has. The creditor is in no just sense treated as a purchaser. He has no equity whatever beyond what justly belongs to the debtor. See *Floyd* v. *Harding* and *Borst* v. *Nalle*, reported in 28 Gratt. 401, 423."

It may be true that had Darne not surrendered the personal privilege under the law to pay Nutt's debt in a depreciated, though legal tender currency, it might have been advantageous to his judgment creditors. And it might have been advantageous to them in a still greater degree, had Darne been so situated as to that debt that he could lawfully and successfully have presented against it the plea of infancy or the plea of the statute of limitations. But

could his judgment creditors have offered such plea for him, or have forced him to offer either of them? Surely not, because they are personal pleas, privileges which a man may exercise or not, as he pleases. So appears to be the truth also as regards the mere power conferred by congress by its act making National currency, however depreciated, legal tender for the payment of debts, even debts which in their origin, as in this case, were gold debts.

For these reasons we are of opinion that the court below erred in refusing a rehearing of its decree sustaining exception No. 2 to the commissioner's report, and disallowing the items of $445 and $335, the gold premiums.

The error in the reformed report being apparent on the face thereof, this court will take notice of it, though no exception was filed in the court below.

The said decree of the circuit court of Loudoun county, refusing to rehear and rescind its decree which is appealed from, is erroneous and must be reversed, with costs to the appellants, and a decree entered here dismissing the plaintiff's bill.

LACY and FAUNTLEROY, J's, dissented.

DECREE REVERSED.