# Staunton.

## SERGEANT V. LINKOUS.

### SEPTEMBER 15th, 1887.

1. EQUITABLE JURISDICTION AND RELIEF—*Vendor and Vendee—Mistake.*—If in sale of land at gross price, upon estimate of quantity influencing price, mistake occurs, which if understood would probably have prevented sale, or varied its terms, equity will afford relief, either by setting aside the sale or by giving a just compensation. *Yost* v. *Mallicote*, 77 Va. 610.

2. IDEM — *Compensation—Measure—Rule—Exception.*—In case for relief by compensation, the general rule is to abate the price according to the average value of the whole tract. This rule is subject to an exception. Where peculiar circumstances add to the value of the land retained, or lost, a departure from this rule is required. *Watson* v. *Hoy*, 28 Gratt. 698.

3. IDEM—*Case at bar.*—Here no circumstances exist to take the case out of the general rule ; none such being averred in the pleadings, or established by the evidence.

Appeal from decree of circuit court of Tazewell county, pronounced in the chancery cause of Linkous against Sergeant.

This suit was brought to enforce a vendor's lien on a certain tract of land situate in the said county. The land was conveyed with a covenant of general warranty by Linkous, the plaintiff, to the defendant, Sergeant, and a portion thereof having been afterwards recovered of the latter by persons having a better title, the single question in the case related to the measure of compensation to

which the defendant was entitled for such deficiency and eviction.

It appears from the record that in July, 1882, the plaintiff, being the owner of a certain tract of land containing about four hundred acres, conveyed to the East River Railroad Company a right of way through the same, and also two acres of the same tract, to be selected by the said company, upon which to establish a station. The deed of conveyance was duly recorded. Afterwards, in January, 1883, the plaintiff sold to R. A. Miller, for five hundred dollars, "one square acre" of the same tract to be laid off opposite the station when located. The contract of sale was in writing, and was duly recorded. In April, 1883, the plaintiff sold and conveyed, with general warranty, to J. D. Sergeant, of Philadelphia, the appellant here, $80\frac{18}{100}$ acres of the same tract of land for the gross sum of $8,018, reserving a lien on the face of the deed for the unpaid purchase-money.

After the conveyance to Sergeant had been made, the Norfolk and Western Railroad Company, which is the lawful successor of the East River Railroad Company (Acts of Assembly 1881-2, p. 138), located the station which was contemplated by the parties when the plaintiff's deed to the last mentioned company was made, and in locating it $\frac{52}{100}$ of an acre of the land conveyed to Sergeant was appropriated by the railroad company, it having the undisputed right to do so under and by virtue of the conveyance to the East River Railroad Company aforesaid. After the station had been located, Miller claimed the right to have the acre of land he had purchased from the plaintiff laid off opposite the station, and this claim was sustained by a decree of the said circuit court in a chancery suit brought by Miller to enforce his rights under the recorded contract of sale above mentioned. And, in execution of the decree, one acre of land opposite the depot building was laid off and conveyed to Miller, which acre was also a part of the

land conveyed by Linkous to Sergeant; so that Sergeant lost in all $1\frac{52}{100}$ acres of the land he purchased from the plaintiff, and the question was, whether he was entitled to be credited for such loss at the rate of the average contract price per acre for the whole tract, as conceded in the bill by the plaintiff, or with the actual value of the land lost at the time of its purchase, as contended for by him. In other words, whether he was entitled to an abatement of the balance of purchase-money at the rate of one hundred dollars per acre, or at the rate of five hundred dollars per acre, the latter sum being the price paid by Miller for the one acre conveyed to him, and, as the evidence showed, the actual value per acre of the land lost at the time of the warranty. The circuit court took the former view, and decreed accordingly, whereupon the defendant applied for and obtained an appeal.

*A. J. & S. D. May*, for the appellant.

*Henry & Graham*, for the appellee.

LEWIS, P., (after stating the case) delivered the opinion of the court.

The decree is in conformity with the rule which was recognized and enforced in *Yost* v. *Mallicote's Adm'r*, 77 Va. 610, where many of the previous decisions were reviewed by Judge Lacy, who delivered the opinion of the court. And this rule, as wise and just as it is well settled, governs in all cases except where particular circumstances, clearly established, require a departure therefrom.

In *Sheffey's Ex'or* v. *Gardiner*, 79 Va. 313, the latest reported case on the subject, the judgment was reversed, because the circuit court refused to instruct the jury to apply the rule above referred to, in assessing the damages

sustained by the purchaser, if any, in that case, unless they
believed from the evidence that when the purchase was
made a special value, per acre, was put upon the land in
controversy different from the average value of the whole
tract.    On the other hand, in *Watson* v. *Hoy*, 28 Gratt. 698,
which was a case of deficiency, the rule without modifica-
tion was not applied, because there were fisheries and
costly buildings on the land, and certain valuable appur-
tenant privileges, which greatly added to the value of the
land, and all of which the purchaser got and retained.    See
also *Blessing's Adm'rs* v. *Beatty*, 1 Rob. 305; 2 Min. Insts.
650, and cases cited in *Watson* v. *Hoy*.

In the present case no circumstances are shown which
take the case out of the general rule.    The land purchased
by the appellant lies near the recently founded and incor-
porated town of Graham, and is divided by the Norfolk
and Western Railroad into two nearly equal parts.    It was
used as ordinary farming land when sold to the appellant,
and had no improvements upon it.    But that portion of it
lying near the railroad is, and was at the time of its pur-
chase, more valuable than that which lies remote.    In the
petition for appeal it is alleged that the land was pur-
chased with a view to building a town upon it, and conse-
quently that the appellant, attaching a special value to so
much of it as lies "near the railroad," gave for the same a
higher price, per acre, than the average contract price of
the whole tract.    But this position is not supported by the
evidence, nor is there any such averment in the pleadings.
The answer of the defendant, which is prayed to be treated
as a cross-bill, avers that the land lying "immediately on
the line of the railroad" is more valuable than that which
is "some distance" therefrom.    But it does not aver that
when the land was purchased any one portion of it was
valued higher than another, nor does it aver what propor-
tion of the land adjoins the railroad, or how much, in the

opinion of the respondent, lies "some distance" therefrom. Nor is the defendant's deposition any more explicit on these important points than his answer. And the evidence of the witness, Graham, who, it seems, was interested with the appellant in the purchase of the land, and who negotiated the purchase, is equally vague and unsatisfactory.

One of the witnesses, it is true, testifies that on one occasion, several months before the purchase, Graham remarked to him that he and his associates expected to buy land upon which to lay off a town, and to erect furnaces and other structures. But the evidence does not show that this remark related to the land afterwards purchased by the appellant from Linkous, and even assuming that it did, the record furnishes no basis upon which the court could safely proceed were it to depart from the general rule. The evidence shows that the land lying near the railroad was worth at the time of its purchase as much as $500 per acre, while that lying remote was worth, as averred in the answer, not less than from thirty to fifty dollars per acre,—the former, as the appellant says in his deposition, being suitable for business and building purposes, while the latter "may not come into the market for years."

Now, if the latter is valued at forty dollars per acre, then the average price per acre for which the whole tract was sold was only two and a half times greater, while it was *just one-fifth* of the real value per acre of the land lying near the railroad. But how much of the land lies "near the railroad," and is therefore worth $500 per acre, and how much is remote, and therefore worth less than that sum per acre, or how the land is to be valued as it recedes from the railroad, are questions upon which the record is silent; which shows at a glance that the contention of the appellant cannot be sustained. Besides, the land was purchased with notice of the prior conveyance to

the railroad company, and also of the Miller contract; yet the appellant, with his eyes open, omitted to stipulate as to the measure of his compensation in the event any part of the land should be lost.

Under all these circumstances, the general rule as to compensation for deficiency was rightly applied by the circuit court, and the decree must be affirmed.

DECREE AFFIRMED.

# Staunton.

## OGDEN AND AL. V. BROWN AND AL.

### SEPTEMBER 15th, 1887.

CHANCERY PRACTICE—*Decree—Answer after.*—Where decree of sale to satisfy lien for purchase-money is entered as by confession, and on same day purchaser answers, setting up that in a suit in same court a controversy is pending as to the ownership of said money—

HELD:

> This is good cause to amend or suspend the decree until the question of ownership is settled. Code 1873, ch. 167, § 35.

Appeal from decree of circuit court of Amherst county, rendered April 16th, 1886, in the suit of E. S. Brown and J. T. Brown, commissioners, complainants, against Silas Ogden and John B. Robertson, trustee, defendants. The decree being unfavorable to the defendants, they obtained an appeal and *supersedeas*. The opinion states the case.

*W. G. Loving,* for the appellants.

*E. S. Brown* and *John H. Lewis,* for the appellees.

LACY, J., delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Amherst county, rendered on the sixteenth day of April, 1886. The suit was instituted in March, 1886, having for its object the enforcement of the lien of certain judgments obtained against the defendant, Ogden, in the name of the

defendant in this suit, John B. Robertson, trustee. The
judgments were obtained, respectively, at the October
term, 1882, October term, 1883, and at the October term,
1884, and were upon the bonds given by Ogden for the
purchase-money of certain property mentioned in the bill
as Pedlar mills, and certain lands adjoining. The enforce-
ment of the judgments was delayed by injunction in an-
other suit, which was dismissed on the eighteenth of
October, 1883. The title to the property was retained by
the trustee, Robertson, to secure the payment of the pur-
chase-money. The bill in this case alleging that a resale
of the land was necessary, and that the trustee was in very
embarrassed circumstances, and that the resale should not
be made by him, and the same being taken for confessed,
as to both Ogden and Robertson, trustee, the court, on the
sixteenth day of April, 1886, rendered the decree com-
plained of; the defendant, Robertson, trustee, having filed
a deed conveying the said land to Ogden in the papers in
the cause. The court decreed that, unless the defendant
paid the said purchase-money within sixty days from the
date of the decree, the appellees, who were named com-
missioners for that purpose, should resell the said land at
public auction on terms there stated. On the same day,
subsequently to the entry of this decree, the answer of
Ogden was filed in the cause by leave of the court, to
which the plaintiffs replied generally. In this answer the
defendant, Ogden, denied the right of the commissioners
appointed by the court to maintain the suit, the contract
not having been made with the commissioners, but with
the trustee, who had not been removed, and setting up a
dispute concerning the ownership of the purchase-money
for the property bought by him, carried on in another suit,
in that court, in the name of Davidson against Smith, and
filed the answer of Hazael Williams in that suit with his
said answer, in which the said Williams claimed that a

large part of the purchase-money was due to him under his original contract concerning the land in question. There was no evidence taken in the cause, nor was the answer of the defendant further noticed in the cause than as has been said; nor was the decree amended or stayed, when the appellant, anticipating an execution of the decree for sale of the land by the commissioners appointed therein for the purpose, applied for and obtained an appeal to this court.

The first error assigned is that the circuit court took no notice of the answer filed on the same day the decree was entered, and rendered the decree upon the bill as taken for confessed as to the said respondent, and decreed a sale in the face of the fact, which appeared from the answer and exhibit filed therewith, that a controversy was depending, in another suit, concerning the ownership of the judgments sought to be enforced in this suit. It is contended on the other hand that, while this is true now, as the record stands, it was not true when the decree was rendered which directed the sale—the said proceedings being subsequent to the decree; that while an answer may be filed at any time before final decree, the cause cannot be delayed thereby. Our statute provides that "at any time before final decree a defendant may be allowed to file his answer, but a cause shall not be sent to the rules, or continued, because an answer is filed in it, *unless good cause be* shown therefor." Chapter 167, section 35, Code of Virginia.

Whatever may have been the propriety of the decree complained of when entered, when on the same day it appeared to have been improvidently rendered, it should have been amended, or its operation suspended, and steps taken to settle, either in this suit or in the suit of Davidson against Smith, the rights of the parties to the fund in question, in order to sell the land at the best price, and to

prevent its sacrifice. Under the circumstances of this case it may be necessary to ascertain the rights of the parties to the fund to be raised by the sale of the land, as well as to determine the liens thereon; and whether it was necessary to take an account of these in this suit, or await the result of that investigation in the other suit, it is necessary that such settlement shall be made before the sale is made. As is suggested, Hazael Williams, who was the original owner of the land, was the owner of a large part of the purchase-money, as he claimed, or if some other person was, the sale could be safely made only after this question had been settled.

We are of the opinion that the circuit court of Amherst county erred in not reforming or amending its decree, or suspending its operation until this question in dispute had been settled. And for this cause the said decree will be reversed, and the cause remanded for further proceedings to be had therein, in order to the final settlement of all disputed questions in the cause. Reversed and remanded.

DECREE REVERSED.

## Staunton.

### SMITH v. RAWLINGS' ADMINISTRATOR AND AL.

#### SEPTEMBER 15th, 1887.

PRACTICE AT COMMON LAW—*New trial*—*Absence of party.*—Plaintiff claimed, as purchaser at a sale under execution, the property levied on by defendant. The issue was tried on first day of the term, in plaintiff's absence. Written evidence of plaintiff's title was produced. Defendant testified to statements of plaintiff that he had released the property to the execution debtor. Verdict was for defendant. During the term plaintiff filed his affidavit that he had started in time for the trial, and had failed to reach the court-house in time by reason of delays in the trains and their failure to connect; that he never made said statements, and that never having released, he still owned the property..

HELD :
He was entitled to a new trial.

Error to judgment of circuit court of Amherst county,. rendered April 12th, 1884, at the trial of an issue wherein H. E. Smith was plaintiff and George H. Dameron was defendant. Verdict was for defendant. Plaintiff's motion for new trial was overruled, and he excepted. Judgment being entered on the verdict, plaintiff obtained a writ of error and *supersedeas.* Opinion states the case.

*Sheffey & Bumgardner,* for the plaintiff in error.

*J. T. Brown,* for the defendant in error.

HINTON, J., delivered the opinion of the court.

It appears by the record in this case that in April, 1878,.

William H. Mosby, administrator of J. H. Rawlings, late sheriff of Amherst county, suing for the benefit of George H. Dameron, recovered a judgment against John T. Edwards and A. W. Williams for the sum of $15,000, the penalty of the bond, to be discharged by the payment of $2,786.10, with interest from the twenty-third September, 1873, and the costs of suit, subject to a credit of $620.25 as of June 27, 1875. An execution was issued upon this judgment and levied on certain personal property as being owned by the said A. W. Williams, when Henry E. Smith, the plaintiff in error here, claiming to be the owner of a large portion of said property, the sheriff required an indemnifying bond of Dameron, which being given, Smith gave a suspending and forthcoming bond; whereupon Smith was allowed to interplead, and an issue was made up to try the right of property. When the case was called for trial, on the tenth day of April, 1884 (that being the first day of the term of the circuit court of said county), the counsel for Smith moved for a continuance on the ground that Smith, who desired to be a witness on his own behalf, was absent. This motion, however, was overruled by the court, and the case was proceeded with. On the trial the counsel for Smith proved by the memorandum of sale of the property in question, and the receipt of the sheriff for the purchase-money of said property, and a deed of loan with the certificate of recordation thereof, that Smith had bought the said property *several years before*, at a sheriff's sale under an execution against Williams, and had then loaned it to Williams. But upon the testimony of Dameron, who stated in substance that the plaintiff in error, Smith, had come to his (Dameron's) house, and told him that he had secured the property embraced in the said deed of loan by a deed of trust on land, and had released the property mentioned in the said deed of loan, and that he (Dameron) was prompted by this statement to levy

on said property, the jury found a verdict in Dameron's favor.

On the twelfth day of April, 1884, Smith appeared in court and filed his affidavit, in which he stated, in substance, that he had started for Amherst court-house on the morning of the tenth of April, 1884, the first day of the term, on the Richmond and Alleghany railroad, to connect at Lynchburg with a train running to Amherst court-house. That the train on the Richmond and Alleghany railroad failed to connect at Lynchburg, the early freight train having just left, and that he then took the next train, which started at 10:30 o'clock A. M., but that this last named train was delayed on the route, and that when he reached Amherst court-house the trial was over. That he had never made the statements testified to by Dameron. That he had purchased the property in the deed of loan specified, and had paid for it with his own money. That he had never been repaid for this outlay; had never been secured therefor by a deed of trust on land; had never released the deed of loan; and that he would so testify if put upon the stand. And he moved the court upon the grounds stated in the affidavit to set aside the verdict of the jury, and grant him a new trial. But the court overruled this motion, and entered an order directing the plaintiff in error to deliver the property in question to the sheriff of Amherst county, and pay to Dameron his costs. But in so doing, we think, the circuit court of Amherst erred. The affidavit of Smith was not only such as to advise the court of the materiality of his testimony, but it ought to have convinced the court that without that testimony no fair trial of the case could be had. The written evidence adduced by the counsel for Smith, standing alone, showed a clear title to the property in Smith. This evidence must be overthrown or evaded. To do this, Dameron had testified that Smith had told him, a short

time before the property in controversy was levied on under the execution in the proceedings mentioned, that he (Smith) had been secured for the property mentioned in the said deed of loan by a deed of trust on land, and that he had released the property specified in the deed of loan, and had no claim upon it. In this aspect of the case Smith's version of what he had really said was most material, and was made so by the testimony of Dameron in regard to his own statements. This testimony of Smith, as foreshadowed in his affidavit, was also of a character, unless discredited, to have induced a verdict directly the reverse of that which was rendered, for it would have offset the testimony of Dameron, and have left the case to be decided upon the written evidence, which was all in Smith's favor. Nor is the statement of Smith as to what he would testify merely contradictory of what Dameron testified that he had told him. On the contrary, it shows that Dameron had misapprehended the deed of trust to which Smith was alluding, and that he (Smith) was referring to another and different trust-deed which had been taken long before there were judgments against Williams.

But it is argued that if all this be so, yet that the failure of Smith to be present at court when the case was called for trial was such negligence as ought to preclude a reversal of the judgment. We cannot, however, concur in this suggestion. The failure of Smith to attend at the trial cannot fairly be imputed to negligence on his part. He started for court in time to have reached there before the case was tried, we may safely assume from the failure of the record to disprove it, if the trains on the Richmond and Alleghany railroad had not failed to connect at Lynchburg with the trains running to Amherst court-house. He then took the next train for that place, and, but for its being delayed on the route, it seems probable that he would have reached court before the trial had ended. In

any event, he, the plaintiff in error, seems to have used reasonable and proper efforts to attend the trial, and his failure to reach the court in time should be imputed to an accident which he could not foresee, rather than negligence on his part.

The judgment must be reversed, and the case must be remanded to the circuit court of Amherst county for a new trial to be had therein.

JUDGMENT REVERSED.

## Staunton.

### BOULWARE, RECEIVER, V. HARTSOOK'S ADM'R AND ALS.

#### SEPTEMBER 15th, 1887.

1. PRINCIPAL AND SURETY.—*Parol evidence.*—The addition of "security" or "surety" to the name of a signer of a bond is *prima facie* evidence of his suretyship; but it may be rebutted by parol evidence to the contrary.

2. IDEM—*Contribution—Case at bar.*—H. borrowed, without security, money from P., who afterwards asked for security. H. said he would pay P. So H.'s partner, E., arranged to borrow the money of P., and gave his bond, with H. and L. as "sureties." H. paid P. his money. P. loaned it to E., who handed it over to H., who used it for the firm. P.'s administrator got judgment on the bond. H. paid the judgment. HELD :

> H. was principal debtor, and can have no contribution from L. as surety.

3. BANKRUPTCY—*Assignee—Sale free of liens.*—Without order of court to that effect, assignee cannot sell bankrupt's lands free of liens. *Ray* v. *Norseworthy*, 23 Wall. 128.

4. IDEM—*Principal—Sureties—Contribution—Case at bar.*—E., the obligor on said bond, whereon judgment was had, became a bankrupt. Assignee sold his lands. H., one of the "sureties," bought it. Its value exceeded the judgment. No proceedings were had in bankrupt court for their sale free of liens.

HELD :

> H. was not entitled to contribution from his "co-surety."

Appeal from three decrees of circuit court of Nelson county, rendered in the chancery cause of Jeffersons against Lewis and others—the first entered in vacation, February 26th, 1885; the second entered April 18th, 1885, amending

the first, and the third entered June 16th, 1886.  The other claims being compromised, the controversy here is only between Z. R. Lewis and Camm Patteson, trustee, with Hartsook's administrator and A. L. Boulware, receiver. Opinion states the case.