# Staunton

F. M. MIZE, RECEIVER FOR FIRST STATE BANK OF BOONES PATH, INC. v. PENNINGTON GAP BANK, INC.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*B. H. Sewell,* for the appellant.

*Pennington & Pennington* and *Earl C. Lanningham,* for the appellee.

GREGORY, J., delivered the opinion of the court.

In November, 1920, S. B. Poteet instituted a chancery suit against T. B. Ely, *et als,* the purpose of which was

to enforce the payment of certain liens by subjecting the real estate of the defendants to sale. Only a portion of the lands involved in that suit, namely the 144 acre tract and the fifty-nine acre tract are involved upon the present appeal. Process was duly served upon each of the defendants, but none of them answered. The two tracts involved here were owned by T. B. Ely and were sold under decrees entered in that cause in June and October, 1922, by Special Commissioner Davidson to M. O. Combs for the price of $8,000. Before the said sale was confirmed to Combs, Ely offered an upset bid for the property and the court, in December 1922, refused confirmation to Combs, but directed that the lands be sold to Ely at the price of $9,715. Ely, however, failed to comply with the terms of sale and his purchase was not confirmed. Another decree was entered in March, 1924, directing that the two tracts be again resold. This was done and Combs again became the purchaser for $8,108.

Combs paid in cash $812.67 and executed two notes for $812.44 each, payable to the special commissioners as a part of the purchase price. This sale was confirmed to Combs in June, 1924, and he took possession of the property.

On October 27, 1926, Combs and H. G. Slemp and wife confessed a judgment in favor of the appellee for $3,383.40 together with interest, attorneys' fees and costs which aggregated $4,741.63. This judgment was docketed on the same day it was confessed and it, and no part of it, has been paid.

Combs failing to pay the said two notes of $812.67 each and which represented a part of his purchase price for the lands, a rule was issued against him by the court to show cause why he had not complied with the terms of sale; and on March 5, 1928, he still failing to complete his purchase by paying the purchase price, the court, by decree directed that the said Davidson, commissioner, should again expose the said lands to sale. The lands

were again resold by the commissioner on April 13, 1928, and at the sale, E. B. Horton became the purchaser for $7,500, subject to a certain mortgage thereon, held by the Federal Land Bank.

Before the sale was confirmed to Horton, Henry Smith made an upset bid of $8,500, which was later increased to $8,700 and on the strength of this bid, the court ordered that the lands be again resold by said special commissioner, and acting under a decree of July 14, 1928, the said commissioner again exposed the property to sale and Henry Smith became the purchaser for $8,700. This last sale was reported by the commissioner to the court and by decree of September 14, 1928, it was confirmed to Henry Smith and possession of the two tracts awarded to him. Later, on November 20, 1929, Smith having complied with the terms of sale by paying the entire purchase money, the commissioner made and delivered to him a deed conveying the two tracts to him.

It appeared that there was a substantial excess in the purchase price agreed to be paid by Smith over and above the amount which Combs had agreed to pay for the said lands, and the court in the decree of September 14, 1928, confirming the sale to Smith, directed that said excess, after Smith had paid the entire purchase money should be paid over to Combs or his assigns by reason of his former purchase of these lands. Upon the final settlement, there still remained in the hands of the commissioner, the excess which, including interest, amounted to $932.02. This amount, or the excess, is the subject matter of the present appeal.

In the meantime, following the decree of September 14, 1928, on November 18, 1929, Combs gave an order or assigned to the First State Bank of Boones Path, all the money due him out of the proceeds of the sale of the lands to Smith. This order or assignment was delivered to the special commissioner on November 18, 1929, the same day upon which it had been executed.

By an order entered on March 7, 1930, the court, upon

the application of the State Corporation Commission, directed that the First State Bank of Boones Path be closed and F. M. Mize, the appellant here, was appointed receiver for said bank and as such, he took possession of all of the bank's assets and among them was the order or assignment of Combs drawn on Davidson, commissioner, directing him to pay all money due Combs arising out of the sale of the lands to Smith, which has been established as $932.02.

After finding that Davidson, commissioner, had in his hands $932.02, to be distributed, and after having by the decree of September 14, 1928, directed that any excess arising from the sale of the lands to Smith should be turned over to Combs or his assigns, the court was advised of the judgment of the Pennington Gap Bank against Combs, et als. for some $4,741. It was also advised of the assignment made by Combs of these funds to the State Bank of Boones Path. In consideration of these new developments the court entered a decree on December 16, 1931, referring the cause to R. B. Ely, as special commissioner, to report all valid liens against the lands of Combs which had been sold by Commissioner Davidson to Smith. Commissioner Ely filed his report on May 5, 1932, showing the judgment recovered by the appellee against Combs, et als. To this report, the First State Bank of Boones Path filed its exceptions on May 16, 1932. After hearing the exceptions to the said report the court, by decree of June 13, 1932, overruled them, confirmed the report and directed Davidson, commissioner, to turn over to the appellee the said excess sum of $932.02. It is from this last decree, the appellant has appealed.

Prior to the entry of this last decree of June 15, 1932, Davidson, commissioner, who was holding the $932.02 moved the court to instruct him as to whom the fund should be paid. The First State Bank of Boones Path moved the court to direct that said sum be paid to it under the assignment it held from M. O. Combs, and it

filed said assignment in this cause. W. S. Cox and Ida Cox moved the court to pay the fund to them in satisfaction of executions which had been issued in their favor against Combs. They filed the executions in the cause showing the returns made thereon. The court, after maturely considering these respective motions and claims, entered its decree disposing of them. By decree of December 16, 1931, it held that, as between the First State Bank of Boones Path under its assignment and W. S. Cox and Ida Cox under their executions, the said bank "has priority over the said three executions, so presented in the cause, and as between the said written order and the said three executions, the holder of the said written order is entitled to have said fund paid to it; but the court is further of opinion * * * that the fund so in the hands of the said W. L. Davidson, special commissioner, arose from the sale of real estate or an interest in real estate owned by said M. O. Combs; and it being suggested to the court as is also evidenced by said three several executions filed in this cause that there are various judgments against said M. O. Combs, which were in existence at the time of the sale of said lands, or interest in lands, which constitute valid liens against the said real estate of said M. O. Combs so sold in this cause, and that it is necessary to properly ascertain the amounts and respective priorities of the said judgment liens before the court can properly direct the disbursements of said fund * * *; it is therefore further adjudged * * * that R. B. Ely who is hereby appointed a special commissioner for the purposes be and he is hereby directed to ascertain and report to court as follows; * * * ".

The said commissioner was directed to report the liens and their priorities against the lands in question as well as the exact amount in the hands of Davidson, commissioner.

Ely, commissioner, acting under the decree of reference of December 16, 1931, filed his report of liens on the lands of Combs which had been sold by Davidson, com-

missioner, to Smith. The lien of appellee was reported as the only lien and it aggregating $4,741.63 was in excess of the amount held by Davidson, commissioner.

The First State Bank of Boones Path excepted to the report of Commissioner Ely on the following grounds: Because the decree of reference of December 16, 1931, was void for several reasons, among them, that the purpose of the original bill was to enforce the liens against the real estate of T. B. Ely, *et als.* and that there was no issue made by the pleadings for a reference and report of liens against Combs; that if said decree of reference was valid, the liens against Combs should have been first reported before his lands were sold and not afterwards; that it is required that before a sale to satisfy judgments can be had, it must first be ascertained if the rents and profits of the lands for five years will pay the judgments; that the fund of $932.02 in the hands of Davidson, commissioner, passed under the assignment to the First State Bank of Boones Path, because the court by decree of September 14, 1928, ordered the said fund to be paid to Combs or his assigns and that the decree of reference of December 16, 1931, adjudging that there were judgment liens against Combs at the time of the sale to Smith "is void as against the said decree of September 14, 1928, adjudging said fund to be paid to the said M. O. Combs or his assigns." There were other grounds of exception to the said report of Commissioner Ely, but it is not important to consider them.

By the decree appealed from entered on June 13, 1932, all of the foregoing exceptions were overruled and as has been stated, the said report was confirmed and the fund ordered to be paid to the appellee.

From what has been stated, it is apparent that this appeal involves only the said excess of $932.02 and it has finally developed into a contest over that amount; Mize, receiver of the First State Bank of Boones Path, claiming it, on the one hand, under the assignment made by Combs on November 18, 1929, and the appellee, on the

other hand, claiming it by virtue of·its judgment against Combs which was confessed on October 27, 1926.

Neither the First State Bank of Boone's Path nor the Pennington Gap Bank were parties to the original suit. The former came into the suit for the first time on December 16, 1931, when it moved the court to pay over to it under the assignment, the funds in the hands of Davidson, commissioner. The latter came into the suit for·the first time on May 5, 1932, when Commissioner Ely, reported its judgment as a lien on the lands of Combs which had been sold to Smith. It is thus seen that the present branch of the suit and the present contest is of recent origin.

The purpose of the original bill was to subject the lands of T. B. Ely, *et als.* to the payment of the liens against them. They embraced the two tracts involved in the present appeal. There was a sale of the said two tracts and four resales. At the first sale, Combs became the purchaser. At the first resale, T. B. Ely became the purchaser. At the second resale, Combs again became the purchaser. At the third resale, Horton became the purchaser and at the fourth and last resale, Henry Smith became the purchaser.

■ It is assigned as error that the court had no power or jurisdiction to enter the decree of reference of December 16, 1931, for a report of liens against the lands of Combs, because the original bill was brought for the purpose of selling the lands of T. B. Ely, *et als,* to satisfy the liens against them; therefore, there was no issue made by the pleadings that would justify an order of reference for an accounting of liens against Combs. In other words the court went beyond the scope of the pleadings.

■ There is no merit in this assignment. The court certainly had the power and jurisdiction to subject the lands of T. B. Ely to the payment of the liens against them and when the purchaser at the sale failed to comply with the terms made by the court, it had jurisdiction to order a resale of the lands. If, upon a resale, the lands

brought an increased amount over and above the price obtained at the original sale, as was the case here, the court had the power to take charge of the excess funds and distribute them to those entitled thereto in order to afford complete relief under the circumstances. *Brown* v. *Ford,* 120 Va. 233, 91 S. E. 145.

■ The fund in controversy arose directly out of Combs' real estate. The judgment of the appellee, under section 6470 of the Code, was a lien upon any real estate or interest therein belonging to Combs. If the court had directed the money to be paid over to the appellant under the assignment, which was subsequent in point of time to the judgment of the appellee, the lien of the judgment would have been defeated and the judgment creditor cut off from the very rights which the said section of the Code conferred upon him. The court had the equitable power and it was its duty to do complete justice and see that the fund was disbursed to the party entitled thereto. Combs owned these lands from the date of his purchase in May, 1924, until August, 1928, more than four years. During the time of his ownership, the appellees' judgment was confessed and docketed, to-wit, October 27, 1926. On and after that date the judgment was a lien upon any interest or equity Combs had in the lands. It is conclusively established by subsequent events that Combs did have an interest in the lands and that such interest amounted to $932.02, the excess amount that the lands brought when he failed to pay for them and they were resold to Smith. Combs' interest in the lands, though now converted into money will be treated as real estate and the lien of the judgment will follow it, certainly so long as it is in the hands of the court.

■ The next point made by the appellant is that the court had no power to sell the lands of Combs without first having an account of liens thereon and ascertaining if the rents and profits will pay the judgments in five years.

The familiar principle stated has no application here. It has to do with suits brought to enforce judgment liens

against lands. Here, as stated, the original suit was brought to enforce liens against the lands of T. B. Ely and not of Combs. No doubt there was an accounting of the liens against the lands of Ely. When those lands were sold under decree of court, Combs became the purchaser and failed to pay the purchase money. Following his default, a rule was issued against him and after the hearing of the rule, the court on March 5, 1928, by decree, ordered the lands resold at the risk of Combs. He was a defaulting purchaser at the judicial sale.

■ No accounting of liens is necessary in suits to enforce vendor's liens. *Neff* v. *Wooding,* 83 Va. 432, 2 S. E. 731. The object of a resale, under such conditions as we have here, is to enforce the contract which a purchaser at a judicial sale has entered into. *Redd* v. *Dyer,* 83 Va. 331, 2 S. E. 283, 5 Am. St. Rep. 272. An accounting of the liens against the lands of Combs was not necessary. The court could order a resale of those lands after a hearing upon the rule, if Combs were in default. Combs was in default in the payment of the purchase price.

■ The next point the appellant makes is that the decree of September 14, 1928, adjudicated that any excess that the property might bring on a resale over and above the amount Combs had agreed to pay should be paid over to him or his assigns, and that the fund now in controversy represents such excess. The appellant also contends that said decree was a final decree and no appeal having been taken therefrom within the statutory period of six months, it is now binding upon the appellee.

At the time of the entry of this decree the court was not informed of either the assignment under which the appellant claims, or of the judgment under which the appellee claims. It had no knowledge of the facts. In addition, as has been stated, at that time neither the appellant nor the appellee were parties to the cause. As we have already seen, the appellant came into the cause on December 16, 1931, more than two years after the

decree while the appellee did not come in until May 5, 1932, which was nearly four years after the decree.

We are not unmindful of the familiar rule that upon a resale of property under a judicial sale, if it does not bring enough to discharge the purchase money of the former sale and cost and expenses incident thereto, the first or original purchaser will be held for the deficiency. But if it brings more than enough for those purposes he is entitled to the surplus. This is true because as long as the sale stands it is his land, but bound for the purchase money. The proceeding to enforce payment, whether by bill or in the more summary way by rule, is substantially a proceeding for the specific enforcement of the contract. When the original purchaser is in default he may be compelled to complete his purchase by a rule against him. In such case, when a resale is ordered, the first or original sale is not set aside, but the property is sold as the property of the original purchaser. This principle is well stated in the cases of *Hurt* v. *Jones,* 75 Va. 341 and *Whitehead* v. *Bradley,* 87 Va. 676, 13 S. E. 195. But those principles have no application here because the court could not have been attempting by its decree to adjudicate the effect of the subsequent assignment here involved for it was not made for more than a year thereafter. Not having any of the facts which subsequently developed before it, the court simply used the ordinary language which is proper in the ordinary case of this kind. It cannot be assumed that the court was attempting to pass upon rights which were not before it and to settle controversies that had not yet arisen. Certainly it will not be assumed that the court was attempting to deprive the appellee of its vested right in and to its judgment and the statutory lien afforded it for its enforcement, which had, by operation of law, fastened itself upon the lands, without the appellee having had a day in court or an opportunity to be heard when it was an essential party to the cause. When the lien of the appellee's judgment attached to the lands in 1926 it could only have been

extinguished by payment, fraud and the like. It certainly could not have been extinguished by the subsequent assignment of Combs. For these reasons we conclude that the decree of September 14, 1928, did not adjudicate the respective rights of either the appellant or the appellee.

The last point that we feel called upon to consider is that Commissioner Ely failed to return with his report the evidence upon which it was based, in conformity with the provisions of section 6185 of the Code.

In the case of *Dermott* v. *Carter,* 151 Va. 81, 144 S. E. 602, this court held that when a commissioner fails to return the evidence with his report any party in interest may ask the court to order the production. Unless this is done, the failure to so return the evidence cannot be assigned as ground of error.

If Commissioner Ely failed to return the evidence with his report, the appellant's failure to ask the court to require him to return it, will preclude a consideration of this assignment of error by this court.

The decree is affirmed.

*Affirmed.*